FORT TRUMBULL CONSERVANCY, LLC *v.*
ANTONIO H. ALVES ET AL.
(SC 16667)

Sullivan, C. J., and Borden, Katz, Palmer and Zarella, Js.

*(One justice concurring in part and dissenting in part)*

Argued February 13, 2002—officially released March 4, 2003

*Scott W. Sawyer*, with whom, on the brief, was *Ellin M. Grenger*, for the appellant (plaintiff).

*Michael P. Carey*, with whom was *Thomas J. Londregan*, for the appellees (named defendant et al.).

*Edward B. O'Connell,* for the appellee (defendant New London Development Corporation).

*Opinion*

SULLIVAN, C. J. The issue to be resolved in this appeal is whether the plaintiff, Fort Trumbull Conservancy, LLC, has standing under General Statutes § 22a-16[1] to bring an action against the defendants to enjoin the demolition of thirty-nine buildings. The defendants are the New London Development Corporation (corporation), Antonio H. Alves, the New London building official, and the city of New London (city). The trial court, *Hon. D. Michael Hurley,* judge trial referee, granted the defendants' motions to dismiss the complaint for lack of subject matter jurisdiction and rendered judgment thereon. The plaintiff appealed from that judgment to the Appellate Court and we then transferred the appeal to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c). We affirm the judgment of the trial court in part and reverse in part.

The trial court reasonably could have found the following relevant facts. The corporation, a nonprofit private development corporation, applied to Alves for demolition permits to destroy thirty-nine buildings owned by it in the city. As the city building official, Alves was authorized to administer the state demolition code, General Statutes §§ 29-406 through 29-413.[2] Some

---

[1] General Statutes § 22a-16 provides in relevant part: "[A]ny person, partnership, corporation, association, organization or other legal entity may maintain an action in the superior court for the judicial district wherein the defendant is located, resides or conducts business . . . for declaratory and equitable relief against the state, any political subdivision thereof, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity, acting alone, or in combination with others, for the protection of the public trust in the air, water and other natural resources of the state from unreasonable pollution, impairment or destruction . . . ."

[2] General Statutes § 29-404 provides: "The local building official shall administer sections 29-406 to 29-413, inclusive. Each such official shall have experience in building demolition, construction or structural engineering,

of the buildings for which demolition permits had been sought were eligible for listing on the National Register of Historic Places, and none of the defendants had declared the buildings to be blighted, deteriorated or deserving of condemnation by virtue of their unfitness for human habitation.

The plaintiff, a limited liability corporation formed by residents of the city, instituted an action pursuant to § 22a-16 seeking a variety of declaratory judgments, temporary and permanent injunctions, damages, costs and equitable relief. The effect of the relief sought by the plaintiff would be to enjoin the issuance of demolition permits for the buildings in question and to enjoin the defendants from taking action to further the demolition process. The plaintiff alleged that demolishing the buildings in question would result in a wide variety of environmental harms, including the consumption of energy that would contribute to widespread terrain disruption, air pollution and water contamination. The plaintiff alleged, for example, that the demolition would have an adverse environmental impact at oil facilities in Louisiana, Alaska and Venezuela, coal mines in Wyoming and Pennsylvania, and cement, steel and bulldozer factories. The plaintiff also alleged that the demolition would waste raw materials, burden solid waste disposal facilities in Connecticut and elsewhere and require expenditure of energy to transport the solid waste materials.

The defendants filed motions to dismiss the plaintiff's complaint, claiming that the plaintiff lacked standing under the Connecticut Environmental Protection Act

shall be generally informed on demolition practices and requirements and on the equipment necessary for the safety of persons engaged in demolition and the public and shall have a thorough knowledge of statutes and regulations of the department concerning demolition. Such official shall pass upon any question relative to the manner of demolition or materials or equipment to be used in the demolition of buildings or structures."

(act), General Statutes § 22a-14 et seq., and that the plaintiff was not otherwise classically or statutorily aggrieved. Specifically, the defendants argued that, because Alves and the city had no statutory authority to consider environmental issues in determining whether to issue the demolition permits, the plaintiff was not aggrieved by the issuance of the permits. The trial court granted the motions and this appeal followed.

The plaintiff claims on appeal that the trial court improperly concluded that the plaintiff did not have standing under § 22a-16 to pursue its claim. The plaintiff further claims that: (1) regardless of whether it has standing under § 22a-16, it has standing to bring an action against the defendants under General Statutes § 7-148 (c) (8);[3] and (2) the dismissal of its action violated the public trust doctrine.[4] We conclude that the

---

[3] General Statutes § 7-148 (c) provides in relevant part: "Powers. Any municipality shall have the power to do any of the following, in addition to all powers granted to municipalities under the Constitution and general statutes

\* \* \*

"(8) The environment. (A) Provide for the protection and improvement of the environment including, but not limited to, coastal areas, wetlands and areas adjacent to waterways in a manner not inconsistent with the general statutes;

"(B) Regulate the location and removal of any offensive manure or other substance or dead animals through the streets of the municipality and provide for the disposal of same;

"(C) Except where there exists a local zoning commission, regulate the filling of, or removal of, soil, loam, sand or gravel from land not in public use in the whole, or in specified districts of, the municipality, and provide for the reestablishment of ground level and protection of the area by suitable cover;

"(D) Regulate the emission of smoke from any chimney, smokestack or other source within the limits of the municipality, and provide for proper heating of buildings within the municipality . . . ."

[4] The plaintiff's claim does not implicate what this court has referred to as the "public trust doctrine." In *Leydon* v. *Greenwich*, 257 Conn. 318, 332 n.17, 777 A.2d 552 (2001), we noted that "that term traditionally has been used to refer to the body of common law under which the state holds in trust for public use title in waters and submerged lands waterward of the mean high tide line," and distinguished it from the common-law concept that "land held by a municipality as a public park or public beach is for the

plaintiff had standing to bring its action under § 22a-16.[5] We also conclude, however, that the plaintiff has failed to allege sufficiently a cause of action against Alves. To the extent that its claims against the city are derivative of the claims against Alves, those claims also legally are insufficient. Accordingly, we conclude that the granting of the motion to dismiss as to those claims, although improper, was harmless, because the claims properly would have been subject to a motion to strike. The plaintiff has raised claims against the city that are not derivative of its claim against Alves, however, and against the corporation, that would withstand a motion to strike. Accordingly, the granting of the motions to dismiss was improper as to those claims.

As a preliminary matter, we address the appropriate standard of review. "If a party is found to lack standing, the court is without subject matter jurisdiction to determine the cause." (Internal quotation marks omitted.) *Ramos* v. *Vernon*, 254 Conn. 799, 808, 761 A.2d 705 (2000). "A determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Doe* v. *Roe*, 246 Conn. 652, 660, 717 A.2d 706 (1998).

"Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction . . . . The objection of want of jurisdiction may be made at any time . . . [a]nd the

benefit of all residents of this state." (Internal quotation marks omitted.) Id., 332. Neither of these doctrines is applicable in the present case.

[5] Accordingly, we do not reach the plaintiff's claims under § 7-148 and what it refers to as the public trust doctrine.

court or tribunal may act on its own motion, and should do so when the lack of jurisdiction is called to its attention. . . . The requirement of subject matter jurisdiction cannot be waived by any party and can be raised at any stage in the proceedings." (Citations omitted; internal quotation marks omitted.) *Lewis* v. *Gaming Policy Board*, 224 Conn. 693, 698–99, 620 A.2d 780 (1993).

"Standing is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented. . . . These two objectives are ordinarily held to have been met when a complainant makes a colorable claim of direct injury he has suffered or is likely to suffer, in an individual or representative capacity. Such a 'personal stake in the outcome of the controversy' . . . provides the requisite assurance of 'concrete adverseness' and diligent advocacy." (Citations omitted.) *Maloney* v. *Pac*, 183 Conn. 313, 320–21, 439 A.2d 349 (1981). "The requirement of directness between the injuries claimed by the plaintiff and the conduct of the defendant also is expressed, in our standing jurisprudence, by the focus on whether the plaintiff is the proper party to assert the claim at issue." *Ganim* v. *Smith & Wesson Corp.*, 258 Conn. 313, 347, 780 A.2d 98 (2001).

"Two broad yet distinct categories of aggrievement exist, classical and statutory. . . . Classical aggrievement requires a two part showing. First, a party must demonstrate a specific, personal and legal interest in the subject matter of the decision, as opposed to a general interest that all members of the community share. . . . Second, the party must also show that the

agency's decision has specially and injuriously affected that specific personal or legal interest. . . . Aggrievement does not demand certainty, only the possibility of an adverse effect on a legally protected interest. . . .

"Statutory aggrievement exists by legislative fiat, not by judicial analysis of the particular facts of the case. In other words, in cases of statutory aggrievement, particular legislation grants standing to those who claim injury to an interest protected by that legislation." (Internal quotation marks omitted.) *Terese B.* v. *Commissioner of Children & Families*, 68 Conn. App. 223, 228, 789 A.2d 1114 (2002).

To provide context for our analysis of the claim that the plaintiff has no standing under § 22a-16 to bring an action against Alves and the city, we begin our analysis with a review of our case law governing the scope and nature of the standing conferred by that statute.[6] In *Belford* v. *New Haven*, 170 Conn. 46, 47, 364 A.2d 194 (1975), one of our early cases addressing this issue, the plaintiffs sought to enjoin the city of New Haven and its mayor from leasing portions of a public park to a private entity for purposes of constructing a rowing course. The trial court concluded that the plaintiffs lacked standing because they had not proved any claim under the act, and the plaintiffs appealed. Id. On appeal, we held that, under § 22a-16, "standing . . . is conferred only to protect the natural resources of the state from pollution or destruction. . . . The act does not,

---

[6] We note that the Appellate Court has considered the issue before us in this case and concluded that § 22a-16 does not confer standing to bring an action against an agency that does not have jurisdiction to consider environmental matters. See *Connecticut Post Ltd. Partnership* v. *South Central Connecticut Regional Council of Governments*, 60 Conn. App. 21, 25, 758 A.2d 408, cert. granted, 255 Conn. 903, 762 A.2d 907 (2000) (appeal withdrawn April 5, 2001). For the reasons that follow, we now overrule that decision to the extent that it is inconsistent with this opinion.

as the plaintiffs urge, confer standing upon individuals to challenge legislative decisions of a municipality which do not directly threaten the public trust in the air, water and other natural resources of this state." (Citation omitted.) Id., 54. We then noted that, at trial, the plaintiffs had not proved "any claim under the . . . [a]ct . . . ." Id., 55. Accordingly, we affirmed the judgment of the trial court that the plaintiffs did not have standing. Id.

In *Manchester Environmental Coalition* v. *Stockton*, 184 Conn. 51, 53–55, 441 A.2d 68 (1981), the plaintiffs, two individuals,[7] brought a challenge under the act against the approval of a plan for an industrial park by the defendant commissioner of commerce. The plaintiffs claimed that " 'unreasonable pollution, impairment or destruction' " of the air would result from the automobile traffic that would be generated by the expected employment at the industrial park. Id., 56–57. On appeal, we reviewed the trial court's ruling that, under § 22a-16, "the plaintiffs' standing and their burden of proof at the trial comprise one and the same thing." Id., 57. We concluded that "[t]hat is not the case. Standing is automatically granted under the [act] to 'any person.' The plaintiffs need not *prove* any pollution, impairment or destruction of the environment in order to have standing." (Emphasis added.) Id. Accordingly, we overruled *Belford* to the extent that it was inconsistent with that conclusion. Id., 57 n.7.

Thus, in *Manchester Environmental Coalition*, we recognized that, contrary to our implicit holding in *Belford*, standing to bring a claim under § 22a-16 does not depend on *proving* a violation of that statute at trial. Rather, we implicitly concluded that a mere colorable

---

[7] The trial court in *Manchester Environmental Coalition* determined that the named plaintiff was not a proper party plaintiff and that finding was not challenged. *Manchester Environmental Coalition* v. *Stockton*, supra, 184 Conn. 53 n.1.

claim by any person of " 'unreasonable pollution, impairment or destruction' " of the environment was sufficient to establish standing under the act.[8] Id., 57.

We next considered the scope of the standing conferred by § 22a-16 in *Middletown* v. *Hartford Electric Light Co.*, 192 Conn. 591, 473 A.2d 787 (1984). In *Middletown*, the plaintiffs, the city of Middletown and its zoning enforcement officer, sought to enjoin the defendants, the Hartford Electric Light Company and its parent company, Northeast Utilities, from burning mineral oil containing polychlorinated biphenyls (PCBs). Id., 593. The trial court dismissed seven of the eight counts of the plaintiffs' complaint and found for the defendants on the remaining count. Id. With respect to the four counts in which the plaintiffs had sought to enjoin the defendants from burning the fuel because they had failed to obtain a variety of required permits from the department of environmental protection, the trial court concluded that the plaintiffs were neither classically aggrieved by that failure nor statutorily aggrieved under the act. Id., 595–97. The plaintiffs appealed to this court.

Reviewing the plaintiffs' claim under the licensing statutes, we noted that, in our then recent case of *Connecticut Fund for the Environment, Inc.* v. *Stamford*, 192 Conn. 247, 470 A.2d 1214 (1984), we had held that "[General Statutes] § 22a-19 of the [act], which permits any person, on the filing of a verified pleading, to intervene in any administrative proceeding and to raise therein environmental issues 'must be read in connection with the legislation which defines the authority of the particular administrative agency. Section 22a-19 is not intended to expand the jurisdictional authority of

---

[8] We note that *Manchester Environmental Coalition*, involved an administrative defendant. There was no claim in that case, however, that the plaintiffs lacked standing because the defendant commissioner of commerce lacked jurisdiction to consider environmental issues.

an administrative body whenever an intervenor raises environmental issues. Thus, an inland wetland agency is limited to considering only environmental matters which impact on inland wetlands. Other environmental impacts must be raised before other appropriate administrative bodies, if any, or in their absence by the institution of an independent action pursuant to § 22a-16.' Id., 250–51." *Middletown* v. *Hartford Electric Light Co.*, supra, 192 Conn. 597. We concluded that "[t]hese same principles apply to bar the city's standing under the licensing statutes. The trial court was therefore correct in concluding that § 22a-16 did not provide the plaintiffs with standing under any statute other than the [act] itself." Id.

Thus, in *Middletown*, we, in effect, interpreted our holding in *Connecticut Fund for the Environment, Inc.*, that § 22a-19 did not expand the jurisdiction of *administrative agencies* to include consideration of environmental matters that they *were not* authorized to consider under their enabling statutes to mean that § 22a-16 did not expand the original jurisdiction of the *Superior Court* to include consideration of statutory claims that *were* within the primary jurisdiction of a particular state agency. Accordingly, we concluded that the plaintiffs did not have standing to challenge the defendants' failure to obtain the permits and licenses required by a variety of licensing statutes, because that matter was within the pervasive regulatory powers of the department of environmental protection. *Middletown* v. *Hartford Electric Light Co.*, supra, 192 Conn. 596.

We also concluded, however, that § 22a-16 did confer standing on the plaintiffs to bring count five of their complaint, which had been brought directly under the act. Id., 597 and n.2. In that count, they had alleged that the burning of the contaminated mineral oil was "reasonably likely to result in the unreasonable pollu-

tion, the impairment of and the destruction of the public trust in the air, water resources and other natural resources within the City." (Internal quotation marks omitted.) Id., 600. We noted that, although the trial court also had concluded that the plaintiffs had standing under the act to bring count five, it had dismissed the count on grounds of federal preemption. Id. The trial court further had found, however, that, as a general matter, the "evidence failed to establish that 'any ascertainable amount of pollutants will be produced as a result of the proposed burning program of the [defendants].'" Id. On this record, we concluded that, "[w]hether or not we agree with the trial court's reasoning on preemption, we can sustain its judgment on the alternate ground of factual insufficiency." Id., 601.

We again considered the scope of standing under § 22a-16 in *Fish Unlimited* v. *Northeast Utilities Service Co.*, 254 Conn. 21, 755 A.2d 860 (2000). In that case, the plaintiffs[9] sought: (1) an injunction to prevent the operation of Millstone Nuclear Power Station (Millstone); and (2) a declaratory judgment that the discharge permit issued to the defendants by the department of environmental protection was invalid. Id., 23. The plaintiffs alleged, inter alia, that "water intakes and discharges at Millstone were causing unreasonable pollution, impairment and destruction of the air, water and other natural resources of the state within the meaning of § 22a-16." Id., 28. The trial court con-

---

[9] The plaintiffs were: Fish Unlimited, a national clean water fisheries conservation organization based in Shelter Island, New York, with a satellite office in Waterford; the environmental groups Don't Waste Connecticut, based in New Haven, STAR Foundation, based in East Hampton, New York, and North Fork Environmental Council, Inc., based in Mattituck, New York; Fred Thiele, a New York state assemblyman, of Sag Harbor, New York; Green Party of Connecticut; the town of East Hampton, New York; and Coalition Against Millstone, an organization located on Long Island advocating the permanent closure of the Millstone Nuclear Generating Station. *Fish Unlimited* v. *Northeast Utilities Service Co.*, supra, 254 Conn. 22–23 n.1.

cluded that "the plaintiffs lacked standing under § 22a-16 to bring this action directly in the Superior Court, and that the plaintiffs failed to exhaust their administrative remedies before the department." Id., 24. The plaintiffs appealed. Id.

We began our analysis of the standing issue in *Fish Unlimited* by recognizing that the act "waives the aggrievement requirement in two circumstances. First, any private party . . . without first having to establish aggrievement, may seek injunctive relief in court 'for the protection of the public trust in the air, water and other natural resources of the state from unreasonable pollution, impairment or destruction . . . .' General Statutes § 22a-16. Second, any person or other entity, without first having to establish aggrievement, may intervene in any administrative proceeding challenging 'conduct which has, or which is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state.' General Statutes § 22a-19 (a)." *Fish Unlimited* v. *Northeast Utilities Service Co.*, supra, 254 Conn. 31. We concluded, however, that, "[a]lthough § 22a-16 abrogates the aggrievement requirement for bringing an action directly in the Superior Court"; id.; under *Middletown* v. *Hartford Electric Light Co.*, supra, 192 Conn. 595, and *Connecticut Fund for the Environment, Inc.* v. *Stamford*, supra, 192 Conn. 247, "the plaintiffs must pursue their claim by intervening in an administrative hearing before the department pursuant to § 22a-19." *Fish Unlimited* v. *Northeast Utilities Service Co.*, supra, 31. "Only in the absence of an appropriate administrative body may an independent action pursuant to § 22a-16 be brought." Id., 32.

In *Waterbury* v. *Washington*, 260 Conn. 506, 800 A.2d 1102 (2002), we had occasion to revisit our holdings in *Middletown* and *Fish Unlimited*. In that case, the plaintiff city of Waterbury, brought an action seeking, inter alia, a declaratory judgment that it had not unreasonably polluted, impaired or destroyed the public trust in the water, as provided in § 22a-16, in connection with its use of water from the Shepaug River. Id., 511. The defendants counterclaimed, alleging, inter alia, that the plaintiff had violated the act. Id., 519. The trial court found for the defendants on their counterclaim. Id., 524. The plaintiff appealed, contending for the first time on appeal that the trial court lacked subject matter jurisdiction over the claim because the defendants had failed to exhaust their administrative remedies under the so-called minimum flow statutes, General Statutes §§ 26-141a through 26-141c. Id., 525.

In our decision, we interpreted *Middletown* as being grounded in the doctrine of exhaustion of administrative remedies. Id., 538–39. We determined, however, on the basis of the plain language and legislative history of the act—in particular, of General Statutes § 22a-18 (b),[10] which allows the trial court to remand an action to an administrative agency that has primary jurisdiction over the environmental question—that "[the act] does

[10] General Statutes § 22a-18 (b) provides: "If administrative, licensing or other such proceedings are required or available to determine the legality of the defendant's conduct, the court in its discretion may remand the parties to such proceedings. In so remanding the parties the court may grant temporary equitable relief where necessary for the protection of the public trust in the air, water and other natural resources of the state from unreasonable pollution, impairment or destruction and the court shall retain jurisdiction of the action pending completion of administrative action for the purpose of determining whether adequate consideration by the agency has been given to the protection of the public trust in the air, water or other natural resources of the state from unreasonable pollution, impairment or destruction and whether the agency's decision is supported by competent material and substantial evidence on the whole record."

not embody the exhaustion doctrine as a subject matter jurisdictional limit on the court's entertainment of an action under it." Id., 537. We concluded, therefore, that the defendants were not required to exhaust their remedies under the minimum flow statutes before bringing suit under § 22a-16. Id., 545. Accordingly, we overruled *Middletown* and *Fish Unlimited* to the extent that they conflicted with that conclusion. Id.

Finally, we note that, shortly before issuing our decision in *Waterbury*, we had occasion to reconsider our holding in *Connecticut Fund for the Environment, Inc.* v. *Stamford,* supra, 192 Conn. 250, that § 22a-19 did not confer standing to intervene in an administrative proceeding when the agency had no jurisdiction to consider environmental issues. See *Nizzardo* v. *State Traffic Commission,* 259 Conn. 131, 153, 788 A.2d 1158 (2002). Although *Nizzardo* involved standing to intervene in administrative proceedings under § 22a-19, and not standing to bring an action under § 22a-16, *Nizzardo* is relevant to this case because it involved the scope of an administrative agency's jurisdiction under the act. In *Nizzardo,* the plaintiff sought to intervene in proceedings before the state traffic commission concerning the application of the defendant First Stamford Corporation for a certificate of operation for a proposed commercial development pursuant to General Statutes § 14-311. Id., 135–37. The plaintiff claimed that the application "concerned 'an administrative proceeding which involves conduct which is reasonably likely to have the effect of unreasonably polluting, impairing or destroying the public trust in the air, water, wildlife or other natural resources of the State . . . .' " Id., 137–38. The commission denied the request to intervene; id., 138; and, on the plaintiffs' appeal, the trial court affirmed

that decision. Id., 139. The plaintiff then appealed to the Appellate Court, which affirmed the judgment of the trial court. Id. We then granted certification to appeal. *Nizzardo* v. *State Traffic Commission*, 252 Conn. 943, 747 A.2d 520 (2000).

On the plaintiff's appeal, we reaffirmed our holding in *Connecticut Fund for the Environment, Inc.*, as reiterated in *Middletown*, that § 22a-19 was " 'not intended to expand the jurisdictional authority of an administrative body whenever an intervenor raises environmental issues.' " *Nizzardo* v. *State Traffic Commission*, supra, 259 Conn. 153, quoting *Middletown* v. *Hartford Electric Light Co.*, supra, 192 Conn. 596–97. In support of this conclusion, we noted that "[i]f a party wants to raise environmental concerns that are beyond the scope of authority of a particular agency, [§ 22a-16] provides a means for doing so." *Nizzardo* v. *State Traffic Commission*, supra, 159. We also concluded that the state traffic commission had no jurisdiction to consider environmental issues. Id., 167. Accordingly, we concluded that the plaintiff had no standing to intervene in the proceedings before the commission. Id., 168.

With these principles in mind, we now turn to the merits of the defendants' claim in this case that the plaintiff had no standing to bring an action under § 22a-16 because Alves and the city had no jurisdiction to consider the environmental ramifications of issuing the demolition permits. As we have noted, we previously have recognized that, under § 22a-16, "any private party . . . without first having to establish aggrievement, may seek injunctive relief in court 'for the protection of the public trust in the air, water and other natural resources of the state from unreasonable pollution, impairment or destruction . . . .' " *Fish Unlimited* v. *Northeast Utilities Service Co.*, supra, 254 Conn. 31, overruled on other grounds, *Waterbury* v. *Washington*, supra, 260 Conn. 545. This court hitherto has recognized

no restriction on the class of persons with standing to seek relief under § 22a-16. See *Manchester Environmental Coalition* v. *Stockton*, supra, 184 Conn. 57 ("[s]tanding is automatically granted under the [act] to 'any person' "). The limitation on the scope of standing to intervene in an *administrative proceeding* pursuant to § 22a-19, first recognized by this court in *Connecticut Fund for the Environment, Inc.*, and reaffirmed in *Nizzardo*, was grounded in our recognition that "[a]n administrative agency, as a tribunal of limited jurisdiction, must act strictly within its statutory authority"; (internal quotation marks omitted) *Nizzardo* v. *State Traffic Commission*, supra, 259 Conn. 156; and in our conclusion that the act did not expand that authority to include consideration of any and all environmental matters raised by a would-be intervenor. There is, however, no such a priori limitation on the authority of the Superior Court. Accordingly, all that is required to invoke the jurisdiction of the Superior Court under § 22a-16 is a colorable claim, by "any person" against "any person," of conduct resulting in harm to one or more of the natural resources of this state.

In this case, the plaintiff alleged in its complaint that the issuance of the demolition permits by Alves "involves individual and cumulative conduct which has, or which is reasonably likely to have, the effect of unreasonably polluting, impairing, depleting or destroying the public trust in the air, water, land or other natural resources of the state . . . ." In support of this legal claim, the plaintiff alleged, inter alia, that "[t]he buildings, structures and properties proposed for demolition, the supply of available energy resources to be consumed in the demolition process and the solid waste demolition by-products are protectible resources within the legislative policy and intent of [the act]" and "[t]he demolition of the buildings, structures and properties and disposal of the debris will unnecessarily and waste-

fully result in added and cumulative solid waste disposal burdens on existing solid waste facilities [within the state] and/or require expenditure of transportation energy for disposal at out-of-state facilities." We conclude that these allegations, although somewhat vague, were sufficient to withstand a motion to dismiss for lack of standing under the act. See *Brookridge District Assn.* v. *Planning & Zoning Commission*, 259 Conn. 607, 611, 793 A.2d 215 (2002) ("[i]n ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader" [internal quotation marks omitted]); *Doe* v. *Yale University*, 252 Conn. 641, 667, 748 A.2d 834 (2000) ("pleadings must be construed broadly and realistically, rather than narrowly and technically" [internal quotation marks omitted]). Accordingly, we conclude that the trial court's granting of the defendants' motions to dismiss was improper.

This does not end our analysis, however. Although we conclude that the trial court improperly determined that it had no subject matter jurisdiction over the plaintiff's complaint, we also conclude that the factual allegations of the complaint were insufficient to support the plaintiff's claims for relief against Alves and its derivative claims against the city. Accordingly, those claims for relief properly were subject to a motion to strike. See *McCutcheon & Burr, Inc.* v. *Berman*, 218 Conn. 512, 527, 590 A.2d 438 (1991) (concluding that "the trial court should have treated the motion to dismiss as a motion to strike" and that court's failure to do so "does not affect our decision" that claim was legally invalid); *Middletown* v. *Hartford Electric Light Co.*, supra, 192 Conn. 600 (concluding that plaintiffs had standing under § 22a-16, but sustaining judgment for defendants on alternate ground of factual insufficiency).

"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted." (Internal quotation marks omitted.) *Faulkner* v. *United Technologies Corp.*, 240 Conn. 576, 580, 693 A.2d 293 (1997); see Practice Book § 10-39. "A motion to strike challenges the legal sufficiency of a pleading, and, consequently, requires no factual findings by the trial court. . . . We take the facts to be those alleged in the complaint . . . and we construe the complaint in the manner most favorable to sustaining its legal sufficiency. . . . Thus, [i]f facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Citations omitted; internal quotation marks omitted.) *Vacco* v. *Microsoft Corp.*, 260 Conn. 59, 64–65, 793 A.2d 1048 (2002). "A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged." *Novametrix Medical Systems, Inc.* v. *BOC Group, Inc.*, 224 Conn. 210, 215, 618 A.2d 25 (1992).

In its claim for relief against Alves and the city, the plaintiff sought, inter alia, a declaratory judgment that: (1) the demolition code is inadequate for the protection of the public trust in the natural resources of the state; (2) the demolition code is not exempt from compliance with the act; (3) Alves does not have only a ministerial duty to comply with the demolition code; and (4) Alves and the city must consider feasible and prudent alternatives to the demolition of the buildings in order to comply with the act. In *Nizzardo*, however, we concluded that the act did not expand the jurisdiction of administrative agencies to include consideration of environmental matters not otherwise within their jurisdiction. *Nizzardo* v. *State Traffic Commission*, supra, 259 Conn. 155–56. As the plaintiff conceded in its complaint, "[n]either the [d]emolition [c]ode, city ordinances, nor [the Building Official and Contracting Administrator's

Code] require [Alves] to consider feasible and prudent alternatives or any other related analysis before issuance of a demolition permit." Accordingly, to the extent that the plaintiff seeks a declaratory judgment that Alves should be required to consider the environmental ramifications of demolition before issuing the demolition permits, such relief cannot be granted consistent with our holding in *Nizzardo* that administrative bodies have no duty—indeed, no authority—under the act to consider environmental matters not otherwise within their jurisdiction.

That holding also disposes of the only remaining request for relief against Alves, namely, the plaintiff's claim for an injunction restraining the defendants from "taking any further action or proceedings for the demolition of the buildings, structures and properties described in the verified [c]omplaint . . . ." As we have noted, the plaintiff concedes that nothing in the demolition code requires or authorizes the building official to consider the environmental ramifications of the demolition before issuing a permit. Rather, the issuance of the demolition permits is contingent only upon the applicant's providing written evidence that the applicant is insured for demolition purposes, that utility connections to the premises to be demolished have been severed, and that the applicant holds a current valid certificate of registration pursuant to General Statutes § 29-402. General Statutes § 29-406. In essence, the permit merely constitutes a formal statement by the building official that those requirements have been met. We cannot perceive how the mere determination that certain legal requirements—which have nothing whatsoever to do with the protection of the natural resources of the state—have been met could violate any duty created by the act. Accordingly, we cannot conclude that the act authorizes the issuance of an injunction

prohibiting Alves from proceeding with that determination.

We recognize that the issuance of the permits is legally a condition antecedent to the demolition of the buildings. We further note that there are any number of legal and practical conditions antecedent to the alleged polluting conduct in this case, including the obtaining of demolition insurance, the severance of the utility connections to the premises to be demolished and the obtaining of a certificate of registration pursuant to § 29-402, all of which are prerequisites for the issuance of the demolition permits. General Statutes § 29-406. This court previously has recognized, however, that, in the absence of any duty, the existence of a "but for" relationship between the conduct of the defendant and the harm suffered by the plaintiff does not suffice to establish a cause of action. See *Connecticut Mutual Life Ins. Co.* v. *New York & N. H. R. Co.*, 25 Conn. 265, 274–75 (1856) (recognizing that harm to plaintiffs was "distinctly traceable and solely due to the misconduct of the defendants," but concluding that, despite "[t]he completeness of the proof of connection between the acts of the defendants and the loss of the plaintiffs," in absence of any duty to plaintiffs, plaintiffs did not have standing to sue defendants). The same principle applies when the plaintiff has failed to allege the violation of a duty. Nothing in the act authorizes the issuance of an injunction against lawful, nonpolluting conduct merely because that conduct constitutes, as a practical or legal matter, a condition antecedent to the alleged harmful conduct of another person.[11] Accordingly, we

---

[11] We note that this case differs from our cases decided under the remoteness doctrine because those cases turn on the remoteness of the alleged misconduct of the defendant from the injury suffered by the plaintiff. See *Vacco* v. *Microsoft Corp.*, supra, 260 Conn. 92 (motion to strike claim under Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq., properly granted when plaintiff's injuries were too remote from defendant's alleged misconduct); *Ganim* v. *Smith & Wesson Corp.*, supra, 258 Conn. 344 (plaintiffs lacked standing to bring variety of statutory and common-

conclude that the plaintiff has failed to state a claim against Alves upon which relief can be granted. To the extent that the plaintiff's claim against the city is derivative of its claims against Alves, we conclude for the same reasons that that claim must fail.[12]

We noted in *McCutcheon & Burr, Inc.* v. *Berman*, supra, 218 Conn. 527–28, that "the primary difference between the granting of a motion to dismiss for lack of subject matter jurisdiction and the granting of a motion to strike is that only in the latter case does the plaintiff have the opportunity to amend its complaint. See Practice Book § [10-44]. The ability to amend after a motion to strike would be unavailing to the plaintiff here, however, because the plaintiff was unable to demonstrate that it could add anything to its complaint by way of amendment that would avoid the deficiencies in the original complaint. Therefore, although the defendants' motion to dismiss was procedurally incorrect, the resulting foreclosure of the plaintiff's ability to amend was harmless." Likewise, in this case, we conclude that there is nothing in the record to suggest that the plaintiff could amend its complaint to allege a claim for relief against Alves or against the city to the extent that its claim against the city is derivative of its claim against Alves.[13] Accordingly, we conclude that, although

law claims when alleged misconduct was too remote from claimed injury); *RK Constructors, Inc.* v. *Fusco Corp.*, 231 Conn. 381, 387–89, 650 A.2d 153 (1994) (motion to strike negligence claim properly granted when plaintiff's injuries were too remote from defendant's alleged misconduct). In this case, the plaintiff simply has not alleged any wrongful conduct by Alves. Accordingly, there is no occasion to consider the proximity of his conduct to the claimed harm.

[12] The plaintiff's claim against the city apparently is grounded in its theory that the city was obligated under the act to require its employee, Alves, to consider environmental matters before issuing demolition permits. That theory, however, like the theory underlying the claims directly against Alves, is foreclosed by *Nizzardo*.

[13] We note that, although the dissent criticizes our resolution of this matter on procedural grounds, which we address later in his opinion, it has not pointed to any *conceivable* factual allegation against Alves that could survive a motion to strike.

the granting of the motions to dismiss was improper, the ruling was harmless as it related to those claims because they properly were subject to a motion to strike.

We note, however, that the plaintiff has alleged conduct by the city that, if proven, could constitute a violation of the act. Specifically, the plaintiff has alleged that the city "has not and does not currently meet the recycling and source reduction goals [for disposal of solid waste] established in [General Statutes §] 22a-220."[14] We express no opinion in this case as to the scope of the city's responsibilities for disposal of the demolition debris under § 22a-220 or whether proof of a violation of that statute would establish a per se violation of the act. We recognize, however, that this is the type of claim that we determined in *Waterbury* v. *Washington*, supra, 260 Conn. 575, to be within the scope of the act. Accordingly, this claim improperly was dismissed.[15]

We also conclude that the plaintiff sufficiently has alleged a cause of action under the act against the corporation on the ground that its demolition activities will result in unreasonable harm to the natural resources of the state. If the plaintiff can prove its claim at trial, the trial court may order some form of injunctive relief against the corporation regardless of whether the demolition permits have been issued. Accordingly, the

[14] General Statutes § 22a-220 sets forth certain duties and rights of municipalities with respect to the disposal of solid wastes generated within their boundaries.

[15] We note that the plaintiff has not made any claim for declaratory relief in connection with this allegation. Specifically, it has not requested a declaratory judgment that the city has violated § 22a-220 and that the disposal of the demolition debris will further exacerbate that violation. The plaintiff could amend its complaint, however, to correct this defect. Therefore, the dismissal of this claim, unlike the claims against Alves and the derivative claims against the city, was not harmless.

claim against the corporation improperly was dismissed.

The dissent disagrees with these conclusions, however, and criticizes the majority for engaging in what it characterizes as an "unfair 'ambuscade' " of the plaintiff by disposing of "the plaintiff's entire case—not just this appeal—on a basis that has never been presented at all in any court in this state." Moreover, it claims that our reliance on *McCutcheon & Burr, Inc.*, is misplaced because that case "involved the exact opposite of what the majority does here." Nevertheless, it would affirm in part the trial court's granting of the defendants' motions to dismiss on alternate grounds of statutory interpretation that were not touched upon by the parties in the trial court or in their briefs to this court.[16] For the reasons that follow, the dissent's criticisms are unfounded.

We begin by addressing the dissent's contention that "neither the oil consumed nor the landfills alleged by the plaintiff to be polluted by the defendants' conduct are natural resources within the meaning of § 22a-16,"

---

[16] At oral argument before this court, counsel for Alves and the city, after acknowledging that he had not briefed the issue, stated: "There is not one natural resource mentioned in the complaint, at least a natural resource as contemplated by § 22a-16 and § 22a-19, as it's been construed by this court, for example, in [*Paige* v. *Town Plan & Zoning Commission*, 235 Conn. 448, 454, 668 A.2d 340 (1995)]. As I understand the *Paige* case, a natural resource within the context of these statutes is something that is not the result of human endeavor. It's a natural thing. The buildings that are going to be razed in this case are not natural things. The constituents of the building are no longer natural things. They might have been trees at one time, but now they are things that are the result of human endeavor. They are not natural resources. The oil that is being used is not a natural resource. It's the result of human endeavor. Humans take it out of the ground and humans refine it." These brief remarks, made at the close of the argument by counsel for Alves and the city and apparently prompted by questions earlier posed by Justice Borden to counsel for the plaintiff; see footnote 17 of this opinion; constitute the entire record pertaining to the alternate ground on which the dissent would affirm the trial court's ruling.

and, therefore, "the plaintiff does not have standing under § 22a-16 to seek to protect those resources . . . ." As we previously have noted in this opinion, "[i]n ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." (Internal quotation marks omitted.) *Brookridge District Assn.* v. *Planning & Zoning Commission*, supra, 259 Conn. 611. The dissent's narrow reading of the allegations of the complaint pertaining to excessive energy use and overburdening of landfills as being limited to the defendants' consumption, i.e., destruction, of *oil* and the pollution of *landfills*, violates this basic principle. As the plaintiff indicated in its brief and in response to questioning by Justice Borden at oral argument,[17] and as a fair reading

---

[17] The plaintiff stated in its brief that, "viewed in a light most favorable to the plaintiff, the defendants' conduct was not only destroying and impairing a natural resource (energy sources) but simultaneously polluting natural resources (air, water and land)."

The following colloquy took place at oral argument before this court:

"[Justice Borden]: I don't understand this. The statute says that there has to be an allegation of impairment or pollution of one of the protected resources—air, water . . . or land. So that's what I'm looking for. What is the allegation, putting aside what your proof will be . . . for an unreasonable pollution of one of the protected resources . . . ? Is it paragraph 55?

"[Counsel for the plaintiff, Scott W. Sawyer]: That's the start of it Your Honor.

"[Justice Borden]: Okay. What's the rest of it? . . . I want the language in the complaint. . . .

"[Sawyer]: Paragraph 59.

"[Justice Borden]: Solid waste landfills?

"[Sawyer]: Yes. They are becoming full, and they are full. And when they're full, what ends up happening, and what the proofs would show, is that they have to [be] transported, thereby causing additional use of oil, as well as the pollution that's emanating, that could be avoided if the demolition doesn't occur in the first place.

"[Justice Borden]: Okay. So let me—I think I'm beginning to understand what the theory is. The theory is that by the unjustified demolition of these buildings, and the unjustified transport to the landfills of the demolished material, oil and other sources of energy are being expended and that expenditure pollutes the air.

of the complaint shows, the plaintiff's claims reasonably may be construed to be that (1) the defendants' excessive use of oil would unreasonably pollute the *air* and (2) that the placement of demolition debris in landfills would both pollute the *land* directly[18] and result in future emanations from the landfills that could impair the air, water, land, plants, wildlife and other natural resources of the state. Air and land—at least certain types of land—indisputably are protectible natural resources under § 22a-16.[19] See *Paige* v. *Town Plan & Zoning Commission*, 235 Conn. 448, 454–64, 668 A.2d 340 (1995) (noting that General Statutes § 22a-1, which refers to "[t]he air, water, land and other natural resources," informs meaning of "natural resources" under act). The mere fact that the narrow, exclusive construction that the dissent has chosen to impose on the plaintiff's allegations—which exclusive construction the plaintiff specifically disclaimed in its brief and at oral argument—may be noncognizable under § 22a-16—an issue that, we repeat, was not raised before the trial court or in the briefs to this court, and was raised in passing at oral argument only in response to the

---

"[Sawyer]: Yes.

"[Justice Borden]: So that's how you get to the pollution of a protected resource, in this case the air. From the use of . . . oil . . . . The use of oil pollutes the air, and that's the allegation under § 22a-16.

"[Sawyer]: Yes, as well as it pollutes the land because the actual demolition debris, which would otherwise . . . still be . . . used within the building, is now being put into a landfill.

"[Justice Borden]: So then the pollution of the land is taking something that was in a building and putting it into a landfill.

"[Sawyer]: Yes. Unnecessarily."

[18] For example, it is foreseeable that the overburdening of a landfill could require either the expansion of that landfill or the construction of another landfill on land that meets the definition of a natural resource.

[19] We express no opinion in this case as to whether the alleged excessive use of oil or overburdening of landfills within the state would result in unreasonable pollution of, respectively, the air and land under the particular facts of this case. We conclude only that the allegations implicate an interest that § 22a-16 was intended to protect and, accordingly, the plaintiff has standing to raise the claims.

dissenting justice's questioning—does not, in our view, justify dismissing the allegations without providing the plaintiff with an opportunity to prove its claims of air and land pollution within the state of Connecticut.[20]

We next address the dissent's statement that *"Niz-zardo* does not and cannot control the question of whether the plaintiff has stated a substantive cause of action under § 22a-16." The dissent states that it "simply [does] not see how a case that involved statutory standing to intervene under § 22a-19 can, ipso facto, control the different question of whether the plaintiff's complaint stated an independent cause of action under § 22a-16," and criticizes the majority for failing to conduct "an inquiry into both the language and purpose of § 22a-16." The dissent has failed to instruct us, however, on how to avoid the logic of the analysis that it criticizes: under *Nizzardo*, Alves has no jurisdiction to consider environmental matters; the plaintiff seeks a declaratory judgment that Alves, in administering the demolition code, must consider environmental matters; therefore, the plaintiff seeks relief that cannot be granted. We cannot perceive how a philosophical inquiry into the language and purpose of § 22a-16 would further elucidate this matter.

We next address the dissent's argument that the reasoning of *McCutcheon & Burr, Inc.* v. *Berman,* supra, 218 Conn. 526, does not extend to the circumstances of this case because, in that case, unlike here, "the parties addressed themselves in substance to the question that was briefed, argued and decided in both the

[20] We agree with the dissent that claims of the impairment of natural resources existing outside this state almost certainly are not cognizable under § 22a-16. In light of the somewhat vague and overlapping nature of the allegations of the complaint and the defendants' failure to raise this issue, however, we believe that the fairest course is to remand the case to the trial court so that the parties can engage in further proceedings there to narrow and refine those allegations.

trial court and this court." We disagree. The underlying issue in the present case, i.e., the effect of an administrative agency's lack of authority to consider environmental questions on its liability to suit under the act, has been fully addressed by the parties, both in the trial court and before this court. Indeed, that was the *only* issue briefed and argued by the parties.[21] On the basis

[21] The plaintiff stated in its brief that "[t]he crux of our argument is that . . . the [laws] governing building demolition fail to contemplate [the consideration of the environmental ramifications of demolition under the act]," and "the [defendants'] failure to consider environmental ramifications in blindly issuing demolition permits frustrates [the act]." In other words, the essence of the plaintiff's claim is that, under the act, Alves and the city can and must be required to consider the environmental ramifications of issuing the demolition permits. Alves and the city stated in their brief that "the only relevant question [in this case] is whether the defendant, Alves, was required to consider environmental issues as part of the exercise of his authority to process an application for a demolition permit." The defendants noted correctly that Alves had no authority to consider environmental issues under the demolition code and, relying on *Connecticut Post Ltd. Partnership* v. *South Central Connecticut Regional Council of Governments*, 60 Conn. App. 21, 758 A.2d 408, cert. granted, 255 Conn. 903, 762 A.2d 907 (2000) (appeal withdrawn April 5, 2001), argued that Alves' lack of jurisdiction deprived the plaintiff of standing. We have concluded, however, purely as a matter of standing jurisprudence, that the Appellate Court in *Connecticut Post Ltd. Partnership* incorrectly determined that a *defendant's* lack of authority to consider environmental matters means that the *plaintiff* is an improper plaintiff if its claims otherwise implicate an interest protected by § 22a-16. We also have concluded, however, that, under *Nizzardo*, the defendants' lack of authority under the demolition code to consider environmental issues deprives the plaintiff of the primary relief that it seeks, namely, a declaratory judgment that, under the act, the defendants are required to consider such issues. Finally, we have concluded, purely as a matter of law, that the defendants cannot be enjoined from engaging in legal conduct, namely, the issuance of demolition permits pursuant to the demolition code. The fact that the parties did not fully anticipate this analysis does not mean that they did not address the substance of the underlying issue, namely, the effect of the defendants' lack of jurisdiction to consider environmental questions on their liability to suit under the act. Accordingly, we take exception to the dissent's accusation that we have departed from fundamental procedural norms and engaged in an " 'ambuscade' " of the plaintiff. Moreover, we find the dissent's charge that we have "decided [this] question, to the plaintiff's prejudice, without resort to any . . . briefing or argument" to be curious, in light of its proposed resolution of this appeal.

of our review, we have concluded that Alves' lack of statutory authority to consider environmental issues did not deprive the plaintiff of standing under the act and, accordingly, did not deprive the trial court of subject matter jurisdiction. We also have concluded, however, that, under *Nizzardo* v. *State Traffic Commission*, supra, 259 Conn. 154,[22] Alves' lack of authority to consider environmental questions means that, as a matter of law, the plaintiff cannot state a claim against him upon which relief can be granted, thereby properly subjecting the claims to a motion to strike.

Similarly, our conclusion in *McCutcheon & Burr, Inc.*, that the defendants' motion to dismiss was an improper procedural vehicle was based on our determination that a failure to comply with General Statutes § 20-325a (b) was not, as the defendants in that case had claimed, subject matter jurisdictional. We concluded instead that "[a]n action to enforce a listing agreement is essentially a breach of contract claim, and the trial court clearly had subject matter jurisdiction over such a claim." *McCutcheon & Burr, Inc.* v. *Berman*, supra, 218 Conn. 527. We also concluded, however, that the plaintiff's failure to comply with the statute rendered the complaint legally insufficient, thereby subjecting it to a motion to strike, even though no such claim had been made or such motion filed. Id.

Thus, there is no basis for the dissent's statement that *McCutcheon & Burr, Inc.*, involved "the exact opposite" of our decision in the present case. As we have explained, the defendants' claim in the present case, just as it was in *McCutcheon & Burr, Inc.*, is that the trial court properly found that it had no subject

---

[22] *Nizzardo* was decided after the parties in the present case had submitted their briefs. This court directed the parties, however, to be prepared to discuss at oral argument before this court the effect of that decision on the issues raised in the present case.

matter jurisdiction over the claims against Alves. We have concluded in this case, just as we did in *McCutcheon & Burr, Inc.*, that the defendants' motions to dismiss improperly were granted because they did not, as claimed by the defendants, implicate the trial court's subject matter jurisdiction. We also have concluded, however, that the claims for relief against Alves, like the claims in *McCutcheon & Burr, Inc.*, properly would have been subject to a motion to strike. We are not sure what "the exact opposite" of our decision in *McCutcheon & Burr, Inc.*, would be,[23] but we are confident that that is not what we have done here.

Finally, we note that, under our decision in this case, § 22a-16 continues to provide redress for all "unreasonable pollution, impairment or destruction" of "the air, water and other natural resources of the state," in that it allows "any person" to "maintain an action" against "any person" who, "acting alone, or in combination with others" directly engages in such activity. General Statutes § 22a-16. Nothing in this decision is contrary to our dicta in *Nizzardo* v. *State Traffic Commission*, supra, 259 Conn. 159, that, "[i]f a party wants to raise environmental concerns that are beyond the scope of authority of a particular agency, [§ 22a-16] provides a means for doing so . . . ." For example, the plaintiff in *Nizzardo* would have had a cause of action under § 22a-16 against the defendant, First Stamford Corporation, on the basis of its allegation that the proposed commercial development would violate the act.

Moreover, as we have noted, nothing precludes an action pursuant to § 22a-16 against a governmental body that is itself engaging in polluting activities, regardless of whether that body has jurisdiction to consider envi-

[23] Perhaps it would be the affirmance of the trial court's granting of a motion to dismiss on alternate grounds that were neither raised before the trial court nor briefed to this court.

ronmental matters. The fact that there is no cause of action against a governmental body if it has no duty to consider environmental matters in making its regulatory decisions does not mean that there is no cause of action if its conduct directly results in harm to the natural resources of the state. For example, the defendants in *Waterbury* v. *Washington*, supra, 260 Conn. 506, sufficiently alleged in their counterclaim a cause of action against the plaintiff city of Waterbury, even though there was no evidence in that case that Waterbury had enacted environmental ordinances under which it would have had jurisdiction to consider the environmental matters raised by the defendants, because the defendants alleged that Waterbury itself was engaged in the misconduct.

The judgment is reversed in part and the case is remanded with direction to deny the motions to dismiss with respect to the claims against the corporation and against the city under § 22a-220 and for further proceedings according to law; the judgment is affirmed in all other respects.

In this opinion KATZ, PALMER and ZARELLA, Js., concurred.

BORDEN, J., concurring and dissenting. The majority concludes that: (1) the plaintiff, Fort Trumbull Conservancy, LLC, has standing under General Statutes § 22a-16[1] to bring an action against all three defendants, New

---

[1] General Statutes § 22a-16 provides in relevant part: "The Attorney General, any political subdivision of the state, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity may maintain an action in the superior court for the judicial district wherein the defendant is located, resides or conducts business . . . for declaratory and equitable relief against the state, any political subdivision thereof, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity, acting alone, or in combination with others, for the protection of the public trust in the air, water and other natural resources of the state from unreasonable pollution, impairment or destruction . . . ."

London Development Corporation (corporation), Antonio H. Alves, the New London building official, and the city of New London (city), for all of the harms alleged in the complaint regarding the demolition of certain buildings; but (2) as to the two municipal defendants, namely, Alves and the city, the trial court's dismissal of the plaintiff's action for lack of standing constituted harmless error because the complaint against them would be subject to a motion to strike for lack of a substantive cause of action. I concur in part with the majority's first conclusion. Regarding the majority's second conclusion, I disagree that it is appropriate for us to consider, in the present appeal, whether the plaintiff's complaint would be subject to a motion to strike, because the issues that would be raised by such a motion have not yet been presented to either the trial court or this court. In this connection, I also disagree with the majority's analysis that the substantive question of whether the complaint states a cause of action against the municipal defendants is controlled by our decision in *Nizzardo* v. *State Traffic Commission*, 259 Conn. 131, 159, 788 A.2d 1158 (2002).

## I

## STANDING

I agree with the majority that the plaintiff has standing to bring an action against all of the defendants under § 22a-16. I disagree, however, that this standing extends to all of the harms asserted by the plaintiff.

Because this case involves statutory standing under § 22a-16, not classical standing, the entire standing inquiry necessarily involves some interpretation of the statute under which the party seeks relief. Keeping this context in mind, I begin by emphasizing two principles regarding the law of standing, as applied to the present case, which the majority does not emphasize. First, every statutory standing inquiry focuses on whether the

*plaintiff* is the proper party to invoke the machinery of the courts, and whether the interest that the plaintiff seeks to vindicate is arguably within the zone of interests protected by the applicable statute. *Med-Trans of Connecticut, Inc.* v. *Dept. of Public Health,* 242 Conn. 152, 160, 699 A.2d 142 (1997); *Mystic Marinelife Aquarium, Inc.* v. *Gill,* 175 Conn. 483, 492, 400 A.2d 726 (1978). Second, the present action against the municipal defendants is precisely the type of independent action under § 22a-16 that we specifically anticipated in our decision in *Nizzardo* v. *State Traffic Commission,* supra, 259 Conn. 159.

Application of these principles and authorities regarding statutory standing to the plaintiff's complaint leads me to conclude that it sufficiently alleged facts to afford it standing to bring an action against all three defendants under § 22a-16. Section 22a-16 affords standing to, among others, "any person, partnership, corporation, association, organization or other legal entity . . . ." This is a partial list of the plaintiffs to whom or which the statute affords standing to bring an action. The plaintiff unquestionably comes within that language, and I do not understand the majority to contend otherwise. Indeed, we have long stated that a basic purpose of the Connecticut Environmental Protection Act (act), General Statutes § 22a-14 et seq., "is to give persons standing to bring actions to protect the environment . . . ." *Mystic Marinelife Aquarium, Inc.* v. *Gill,* supra, 175 Conn. 499. "The broad language of the act gives any person the right to bring an action for declaratory and equitable relief against pollution." *Belford* v. *New Haven,* 170 Conn. 46, 53, 364 A.2d 194 (1975), overruled in part, *Manchester Environmental Coalition* v. *Stockton,* 184 Conn. 51, 57 n.7, 441 A.2d 68 (1981). Thus, the plaintiff is within the class of persons contemplated by the statute and, therefore, is a proper party to invoke the machinery of the courts thereunder.

In addition, under the rubric of standing, this is precisely the type of case that we anticipated in *Nizzardo* v. *State Traffic Commission*, supra, 259 Conn. 159. Contrary to the present case, that case did not involve an independent action under § 22a-16, but an attempted intervention under General Statutes § 22a-19. In *Nizzardo*, we concluded that the plaintiff did not have standing to intervene in the proceedings of the defendant traffic commission because the commission had no environmental jurisdiction to adjudicate the environmental issues that the plaintiff sought to raise.[2] Id. We stated therein, however, that "[t]he establishment of the right to bring an independent action to address environmental concerns lends credence to our conclusion that the issues appropriately raised by intervention pursuant to § 22a-19 are limited to those within the jurisdiction of the particular agency. If a party wants to raise environmental concerns that are beyond the scope of authority of a particular agency, the act provides a means for doing so, namely, instituting an independent action pursuant to § 22a-16." Id. Thus, in *Nizzardo*, we specifically anticipated that, as in the present case, a party would have standing to bring an independent action under § 22a-16 against an agency or agent that did not have environmental jurisdiction, such as these municipal defendants.

[2] Two aspects of *Nizzardo* v. *State Traffic Commission*, supra, 259 Conn. 131, are worthy of note. First, it decided the question of the plaintiff's standing as a matter of statutory interpretation of § 22a-19. See id., 148–49. Second, its ultimate holding that one may not intervene to raise environmental issues before an agency that has no environmental jurisdiction; id., 159; also is supported by the notion that, despite the broad language of § 22a-19, the legislature did not intend to require an agency without any environmental jurisdiction—and, therefore, without any environmental expertise—to decide environmental questions. That rationale does not apply, however, to an independent action under § 22a-16, because the legislature clearly has placed such a responsibility on the court as the ultimate decision maker in such an action. See, e.g., *Waterbury* v. *Washington*, 260 Conn. 506, 545–46, 800 A.2d 1102 (2002).

These conclusions do not, however, end the standing inquiry. The plaintiff must also seek to vindicate an interest that is arguably within the zone of interests that the statute involved seeks to protect. *New England Cable Television Assn., Inc.* v. *Dept. of Public Utility Control*, 247 Conn. 95, 111–12, 717 A.2d 1276 (1998); *Med-Trans of Connecticut, Inc.* v. *Dept. of Public Health*, supra, 242 Conn. 159. Thus, "standing is conferred only to protect the natural resources of the state from pollution . . . ." *Mystic Marinelife Aquarium, Inc.* v. *Gill*, supra, 175 Conn. 499. That requirement is drawn directly from the language of General Statutes §§ 22a-15 and 22a-16. Section 22a-15 declares the policy of the act: "[T]here is a public trust in the air, water and other natural resources of the state of Connecticut and that each person is entitled to the protection, preservation and enhancement of the same . . . [and] it is in the public interest to provide all persons with an adequate remedy to protect the air, water and other natural resources from unreasonable pollution, impairment or destruction." Section 22a-16 affords standing to any person or entity to sue any private or public person or entity, "acting alone, or in combination with others, for the protection of the public trust *in the air, water and other natural resources of the state* from unreasonable pollution, impairment or destruction . . . ." (Emphasis added.) See footnote 1 of this opinion for the text of § 22a-16. Thus, in order for the plaintiff to have standing to bring an action against *anyone* under § 22a-16, the plaintiff must be seeking to protect "the air, water [or] other natural resources of [this] state . . . ." On this aspect of the analysis of the plaintiff's standing, I depart from the majority.

As I read the complaint in the plaintiff's favor, as we must at this stage of the proceedings, the plaintiff raises four sets of environmental harms: (1) excessive use of energy in demolishing the buildings at issue; (2) exces-

sive use of energy in this state and elsewhere resulting from the demolition; (3) local air pollution resulting from the demolition process; and (4) overfilling of landfills as the dumping grounds of the debris from the demolition process. At oral argument before this court, the plaintiff refined those claims by specifying that, by its reference to the excessive use of energy, it meant the excessive use of *oil* as a *source* of energy, presumably in enabling the trucks, which are to cart the demolition debris away from the demolition site, to operate, and also, presumably, the use of such oil in operating demolition machinery. In my view, only the third set of harms, namely, the pollution of the air in New London, is arguably within the zone of interests sought to be protected by § 22a-16, because only that air is within the meaning of the statutory language, "the air, water and other natural resources of the state . . . ."[3] Put another way,

---

[3] Despite the majority's suggestion to the contrary, this issue has been raised in the present case, at least at oral argument before this court. Both the plaintiff and the defendants addressed themselves, in the context of the standing argument, to the question of whether the plaintiff's contentions regarding oil and landfills are within the contemplation of § 22a-16. Indeed, the defendants contended, in the argument over standing, that the interests sought to be protected by the plaintiff were not resources of the state within the meaning of § 22a-16. In any event, moreover, because we have been squarely presented with the question of the plaintiff's standing under that statute, we are constrained to interpret the statute properly, and are not confined to those specific arguments raised by the plaintiff. In other words, merely because the plaintiff contends, incorrectly, that § 22a-16 confers standing on the plaintiff to assert *all* of its claims, does not mean that we are precluded from concluding that the plaintiff has standing to assert only *some* of its claims.

In this connection, the majority apparently chides me for my questioning during oral argument before this court, taking the unusual step of referring to me by name and quoting from my colloquy with the plaintiff's counsel in my attempt to understand the plaintiff's theory of pollution as alleged in its broadly and imprecisely phrased complaint. See footnotes 16 and 17 of the majority opinion and the accompanying text. In my view, if a litigant makes oral representations to this court regarding the meaning of its claim, it is irrelevant whether those representations were made in response to questioning, and by whom. In any event, I deem it to be a part of my role as a Justice of this court to attempt to understand what a litigant does mean by such "vague" allegations, rather than to attempt to speculate and, perhaps,

I would conclude that neither the oil consumed in the demolition process nor the overfilled landfills complained of by the plaintiff are "natural resources of the state," within the meaning of § 22a-16. Moreover, this conclusion would limit the plaintiff's standing in its entirety, as against both the corporate defendant and the municipal defendants, contrary to the conclusion of the majority that the plaintiff's standing extends to all of the harms alleged against both sets of defendants.

It is axiomatic that whether particular substances constitute "natural resources of the state" within the meaning of § 22a-16 presents a question of statutory interpretation. *Paige* v. *Town Plan & Zoning Commission*, 235 Conn. 448, 454, 668 A.2d 340 (1995); *Red Hill Coalition, Inc.* v. *Town Plan & Zoning Commission*, 212 Conn. 727, 735, 563 A.2d 1347 (1989). Fortunately, in deciding whether the oil or the landfills constitute natural resources of this state, we are not required to write on a blank slate, because both *Red Hill Coalition, Inc.*, and *Paige* give us guidance. In *Red Hill Coalition, Inc.* v. *Town Plan & Zoning Commission*, supra, 735–40, we concluded that "prime agricultural land" is not such a resource within the meaning of the act. In *Paige* v. *Town Plan & Zoning Commission*, supra, 454–63, we concluded that "trees and wildlife" are such natural resources, irrespective of whether they have economic value. Of more importance to the present case, moreover, in *Paige*, we distinguished *Red Hill Coalition, Inc.*, as follows: "Prime agricultural land is different from what is claimed to be a natural resource in this case. Prime agricultural land is a subcategory of land subject to human alteration that is kept barren of plant and animal life that would otherwise eventually live on it through natural succession. Agricultural land is not naturally occurring." Id., 463. Thus, reading *Red Hill*

---

arrive at an interpretation that the litigant does not intend. See footnote 20 of the majority opinion.

*Coalition, Inc.*, and *Paige* together, I would conclude that, as the defendants in the present case suggested at oral argument before this court, an essential element of a natural resource under the act is that it be a resource occurring naturally that has not been subject to human alteration.

Applying this definition to the plaintiff's claims in the present case, I would conclude, further, that neither the oil consumed nor the landfills alleged by the plaintiff to be polluted by the defendants' conduct are natural resources within the meaning of § 22a-16. The oil at issue obviously is refined oil, not occurring in its natural condition. The same may be said of the landfills. They are, like the agricultural land considered in *Red Hill Coalition, Inc.*, not a natural resource, because they obviously are land that is the result, not of natural occurrence, but of human alteration. Furthermore, to the extent that the plaintiff relies on the use of oil outside of Connecticut, that oil cannot possibly be a natural resource "of [this] state . . . ."[4] General Statutes § 22a-16. Therefore, the plaintiff does not have standing under § 22a-16 to seek to protect those resources, because they are not "natural resources of the state . . . ."

By contrast, however, the air in New London, which the plaintiff asserts will be polluted by virtue of the debris and automotive fumes resulting from the demolition process, is a natural resource of the state. Thus, the plaintiff does have standing to seek protection of that resource.[5]

---

[4] Indeed, the last time I looked, I did not see any oil wells pumping oil from the ground in this state. Although perhaps Texas, Oklahoma and Alaska could claim oil as a natural resource, our state cannot.

[5] This conclusion does not mean, however, that, simply because the plaintiff has standing to raise such a concern, any such pollution would, as a factual matter, rise to the level of "unreasonable pollution" of the air, which is what the plaintiff would have to prove in order to prevail on its cause of action under § 22a-16.

## II

## THE MAJORITY'S MOTION TO STRIKE ANALYSIS

The majority concludes that, although the trial court improperly dismissed the action for lack of standing, that was harmless error because "the plaintiff has failed to allege sufficiently a cause of action against Alves;" and because "its claims against the city are derivative of the claims against Alves, those claims also legally are insufficient." Thus, the majority asserts, "the claims . . . properly would have been subject to a motion to strike." The problem with this conclusion is that the municipal defendants have never filed a motion to strike the complaint,[6] the trial court has never considered whether the complaint is legally sufficient, and, obviously, that fundamental legal question has never even been briefed or argued, either in the trial court or in this court. In my view, therefore, it is inappropriate for the majority to consider that question.

Before continuing with this contention, however, I think it would be helpful to specify precisely how the majority reaches the conclusion that the plaintiff has not stated a cause of action against the municipal defendants. The majority's conclusion is based entirely on our decision in *Nizzardo* v. *State Traffic Commission*, supra, 259 Conn. 131. I think it is fair to say that the sum and substance of the majority's analysis in this regard is the following passage from the majority opinion: "In *Nizzardo* . . . we concluded that the act did not expand the jurisdiction of administrative agencies to include consideration of environmental matters not otherwise within their jurisdiction. [Id., 155–56]. As the

---

[6] Indeed, under the procedural posture of the case in the trial court, the defendants could not have properly filed a motion to strike the complaint, because once they moved to dismiss the case for lack of subject matter jurisdiction, the court was obligated to rule on that question before going any further in the case. See *Federal Deposit Ins. Corp.* v. *Peabody, N.E., Inc.*, 239 Conn. 93, 99, 680 A.2d 1321 (1996).

plaintiff conceded in its complaint, '[n]either the [d]emolition [c]ode, city ordinances, nor [the Building Official and Contracting Administrator's Code] require [Alves] to consider feasible and prudent alternatives or any other related analysis before issuance of a demolition permit.'[7] Accordingly, to the extent that the plaintiff seeks a declaratory judgment that Alves should be required to consider the environmental ramifications of demolition before issuing the demolition permits, such relief cannot be granted consistent with our holding in *Nizzardo* that administrative bodies have no duty—indeed, no authority—under the act to consider environmental matters not otherwise within their jurisdiction."

In my view, *Nizzardo* does not and cannot control the question of whether the plaintiff has stated a substantive cause of action under § 22a-16. *Nizzardo* involved: (1) the standing of the plaintiff, and not whether he had stated a substantive cause of action; (2) intervention under § 22a-19, and not standing to bring an independent action under § 22a-16;[8] and (3) the proper interpretation of § 22a-19. It is axiomatic that whether a plaintiff has standing and whether a

---

[7] Significantly, the question of whether the municipal defendants are required to consider "feasible and prudent alternative[s]" is a question that does not even arise in a claim under the act, presented under § 22a-16, unless and until the plaintiff has presented, at the trial, a prima facie showing of unreasonable pollution. In that event, General Statutes § 22a-17 (a)—not § 22a-16—provides to the purported polluter "an affirmative defense, that, considering all relevant surrounding circumstances and factors, there is no feasible and prudent alternative to the defendant's conduct . . . ." Thus, not only has the majority gone beyond the standing question in this case, but, as support for that analysis, it relies on an allegation in the complaint regarding an issue that would not even arise until the plaintiff had established a prima facie case at trial.

[8] Indeed, as I have noted, in *Nizzardo* itself we specifically stated that, instead of seeking to intervene under § 22a-19, the plaintiff would have had standing to bring an action against a nonenvironmental agency in an independent action under § 22a-16. *Nizzardo* v. *State Traffic Commission*, supra, 259 Conn. 159.

plaintiff has made out a substantive cause of action involve two separate and distinct inquiries. "When standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue *and not . . . whether, on the merits, the plaintiff has a legally protected interest that the defendant's action has invaded.*" (Emphasis added.) *Mystic Marinelife Aquarium, Inc.* v. *Gill,* supra, 175 Conn. 492. Thus, I simply do not see how a case that involved statutory standing to intervene under § 22a-19 can, ipso facto, control the different question of whether the plaintiff's complaint stated an independent cause of action under § 22a-16.

Thus, the question of whether the plaintiff has stated a cause of action against the municipal defendants would involve, for example, an inquiry into both the language and purpose of § 22a-16.[9] Indeed, as the majority acknowledges, we implicitly permitted, and considered on its merits, a claim of pollution by a municipality in *Waterbury* v. *Washington,* 260 Conn. 506, 800 A.2d

---

[9] In this connection, I note that, at least on its face, § 22a-16 arguably could be read to permit such a claim, because the plaintiff could argue that it has stated a claim "for declaratory and equitable relief against . . . a political subdivision [of the state] . . . acting alone, or in combination with others, for the protection of the public trust in the air . . . from unreasonable pollution . . . ." General Statutes § 22a-16. I can see, however, powerful arguments on the other side, namely, that, despite the breadth of this language, it was not intended to embrace, as a substantive matter, a nonenvironmental governmental official who was merely acting in compliance with the applicable statutes and ordinances. The language of § 22a-16, "or in combination with others," probably is aimed, not at this type of situation, in which the official's conduct is simply a "but for" cause of the alleged pollution, but at the situation in which the pollution caused by two or more actors combines to cause "unreasonable pollution . . . ." Indeed, without any briefing or argument on this question, I would be strongly inclined to conclude along these lines. My point is, however, that these are questions that are appropriately addressed, not within the confines of the present appeal, where they have not been briefed or argued, but within the context of a subsequent proceeding in which the plaintiff has had the opportunity to address them.

1102 (2002), despite the fact that the city of Waterbury had not enacted environmental ordinances.

Contrasting *Waterbury* with the present case simply underscores the notion that, whether a municipality may be held liable for pollution under § 22a-16 depends on the facts of the case, and whether those facts make it a polluter under § 22a-16. Thus, the question of whether the municipal defendants in the present case may be held liable for pollution under § 22a-16—which is the question that a motion to strike would raise— necessarily involves the interpretation of § 22a-16 as applied to the facts alleged in the complaint. Significantly, the majority's entire analysis, quoted previously, fails to perform this interpretive task.[10]

This brings me back, then, to the procedural question of whether it is appropriate for the majority to dispose of this case on what is essentially an alternate ground to affirm the trial court's judgment, namely, that the plaintiff has not stated a valid cause of action against the municipal defendants. I contend that it is not appropriate.

Although, I agree that, when and if a motion to strike were filed, it would *probably* be appropriately granted; see footnote 9 of this opinion; *how* we decide questions

---

[10] I acknowledge that some—but not all—of the policy concerns that underlie *Nizzardo* could be applied to the separate question of whether the plaintiff here has stated a claim under § 22a-16. That is quite different, however, from concluding, without the question ever having been briefed or argued, that *Nizzardo* controls that separate question. It is true, as the majority notes, that the parties were instructed to address themselves at oral argument before this court to *Nizzardo*, which was decided after they had filed their briefs in this court, and it is also true that they did so. That instruction, however, was given in the context of the question that the present appeal presented, namely, whether the plaintiff had standing under § 22a-16. It did not ask them to address—and they therefore did not address—either in form or in substance, the separate question of whether, under the facts of the case and the language of the statute, the plaintiff had stated a cause of action under that statute.

of law is just as important as *what* we decide. It is important that this court, which insists on litigants adhering to fundamental procedural norms, do so itself.

We have often rejected attempts by litigants in this court to raise nonconstitutional issues that were never presented to the trial court, characterizing them as unfair "ambuscades" of the trial court. See, e.g., *In re Jonathan S.*, 260 Conn. 494, 505, 798 A.2d 963 (2002); *State* v. *Meehan*, 260 Conn. 372, 390, 796 A.2d 1191 (2002); *State* v. *Berube*, 256 Conn. 742, 748, 775 A.2d 966 (2001). We have also refused to consider claims of an appellate litigant that it had not adequately briefed in this court. See, e.g., *State* v. *DeJesus*, 260 Conn. 466, 477, 797 A.2d 1101 (2002); *Rocque* v. *Northeast Utilities Service Co.*, 254 Conn. 78, 87, 755 A.2d 196 (2000). Indeed, we have even criticized, and reversed, the Appellate Court for reaching out and deciding a case before it on a basis that had never been raised or briefed. See, e.g., *Lynch* v. *Granby Holdings, Inc.*, 230 Conn. 95, 98–99, 644 A.2d 325 (1994). Finally, we have severely criticized a trial court for deciding a case, adversely to the plaintiff, on a substantive basis that the court itself raised sua sponte, without affording the parties, and particularly the plaintiff, prior notice and a hearing on that substantive question. See *Sassone* v. *Lepore*, 226 Conn. 773, 776–77, 629 A.2d 357 (1993). Nonetheless, the majority is willing to dispose of the plaintiff's entire case—not just this appeal—on a basis that has never been presented at all in any court in this state.

The majority's approach may well have other negative consequences for our appellate jurisprudence. For example, what will we say to the future appellee who is defending an improperly granted motion to dismiss, and who, in violation of our usual appellate limitations and norms, asks us at oral argument before this court, citing the present case, to decide that the trial court's dismissal was harmless because the plaintiff's com-

plaint was legally insufficient—despite the fact that such an issue had never been raised, briefed or argued in either the trial court or this court? I can think of no legitimate answer to this question.

In addition, the approach of the majority cannot even command the justification of judicial economy. Because the plaintiff's complaint against the corporation still stands, the case must continue in the trial court in any event. It escapes me, therefore, why the majority is so eager to rule the municipal defendants out of the case at this stage of the proceedings. If it is so obvious that the complaint is legally insufficient that it does not even need presentation, briefing and argument on the question, then surely their lawyers would recognize that and move to strike the complaint against them, after a proper remand on the standing issue.

Finally, this brings me to the only case on which the majority relies for its analysis, namely, *McCutcheon & Burr, Inc.* v. *Berman*, 218 Conn. 512, 590 A.2d 438 (1991).[11] In my view, that case offers no support for the majority's analysis, despite the majority's assertion to the contrary.

*McCutcheon & Burr, Inc.*, involved the exact opposite of what the majority does here. It is the exact opposite because, as I explain later in this opinion, in *McCutcheon & Burr, Inc.*, the parties addressed themselves *in substance* to the question that was briefed, argued and decided in both the trial court and this court. By contrast, in the present case, the question of statutory interpretation regarding whether the plaintiff had stated a valid cause of action under § 22a-16 was

---

[11] The majority's additional reliance for this analysis on *Middletown* v. *Hartford Electric Light Co.*, 192 Conn. 591, 473 A.2d 787 (1984), is misplaced. In that case, the trial court held a full factual hearing; id., 593; and found the facts adversely to the plaintiff's claim under the act. Id., 600. The trial court's resolution of that fully litigated issue constituted this court's alternate basis for affirmance. Id.

not addressed in substance either in the trial court or in the present appeal, despite the majority's assertion that it was so addressed.[12]

In *McCutcheon & Burr, Inc.*, the plaintiff, a real estate broker, brought an action against the defendants, certain individuals and their real estate partnership, for a real estate commission based on, inter alia, a written listing agreement governed by General Statutes § 20-325a (b). Id., 514–15. The defendants moved to dismiss the complaint for lack of subject matter jurisdiction on the ground that the listing agreement did not comply with § 20-325a (b) because it had not been signed by all of the owners of the property, and the trial court granted the motion to dismiss on that basis. Id., 517–18.

On appeal, we fully considered, on the basis of the briefs and arguments presented to us, the question of whether the listing agreement was deficient in that respect, and we agreed with the trial court that the listing agreement was so deficient. Id., 522. We noted, however, that this deficiency in who had signed the listing agreement was not a subject matter jurisdictional defect, subject to a motion to dismiss, but, instead, that "the ruling of the trial court on the motion to dismiss necessitated a *full review of the merits of the underlying issue*, namely, whether the listing agreement satisfied the requirements of § 20-325a (b)." (Emphasis added.) Id., 526. It was that ruling that we were reviewing in the appeal in *McCutcheon & Burr, Inc.*, and, therefore, the merits of that issue were fully briefed and argued before us. We stated that "the proper procedural mechanism addressing whether § 20-325a (b) was

---

[12] The majority's response to this argument is that the majority "cannot perceive how a philosophical inquiry into the language and purpose of § 22a-16 would further elucidate this matter." In my view, analyzing the language and purpose of a statute is not a philosophical inquiry; it is, instead, necessary to the process of deciding whether a plaintiff has stated a cause of action based on a specific statute.

satisfied would have been a motion to strike under Practice Book § 152 [now § 10-39], rather than a motion to dismiss under Practice Book § 142 [now § 10-30]." Id. Because, however, the plaintiff had not been prejudiced by the foreclosure of an opportunity to amend its complaint;[13] id., 528; we held that the procedural impropriety was harmless. Id.

The critical difference between *McCutcheon & Burr, Inc.*, and the majority's analysis is this: in *McCutcheon & Burr, Inc.*, the parties, albeit under an improper procedural heading, briefed and argued to both the trial court *and this court* the merits of this court's decision, namely, whether the plaintiff's listing agreement satisfied the substantive requirement of the governing statute, and this court decided that question on the basis of those briefs and arguments. Thus, no party was treated unfairly by our disposition of the case. In the present case, by contrast, the question of whether the plaintiff's complaint satisfies the substantive requirements of the governing statute, namely, § 22a-16, has never been briefed or argued to the trial court or this court, and the majority has decided that question, to the plaintiff's prejudice, without resort to any such briefing or argument. Put another way, in *McCutcheon & Burr, Inc.*, the parties fully presented to *both* courts the question of whether the plaintiff had a cause of action, but under an incorrect procedural mechanism. In the present case,

[13] I acknowledge that, as the majority asserts, it is highly unlikely that the plaintiff in the present case could, if given the opportunity after the granting of a motion to strike, amend its complaint to add facts that would establish a valid cause of action. In my view, that is irrelevant. Because the parties here have never, in substance, briefed or argued the question of whether the plaintiff has stated a cause of action—in contrast to *McCutcheon & Burr, Inc.*, in which they did brief and argue that question in substance— the plaintiff should not be deprived of its right to notice and a hearing on that substantive question simply because the majority has decided, *without* such briefing or argument, that the plaintiff has not stated such a cause of action.

by contrast, the parties have presented to both courts, under the *proper* procedural mechanism, the only question in the case, namely, whether the plaintiff has standing, but the majority has decided a different question, in a way that is fatal to the plaintiff's claim, that the plaintiff has never been given the opportunity to confront.

I therefore respectfully dissent.