## PAUL E. O'BRIEN *v.* STOLT-NIELSEN TRANSPORTATION GROUP, LTD., ET AL.

Superior Court, Complex Litigation Docket at Stamford
File No. X08 CV-02 0190051S

Memorandum filed June 13, 2003

*Silver, Golub & Teitell,* for the plaintiff.

*Finn, Dixon & Herling,* for the defendants.

## INTRODUCTION

ADAMS, J. The plaintiff, Paul E. O'Brien, is an attorney and the former general counsel of the named defendant, Stolt-Nielsen Transportation Group, Ltd. (Stolt-Nielsen). He asserts that he resigned from his position at Stolt-Nielsen when, and because, that company failed to cease and rectify its allegedly ongoing criminal conduct after the plaintiff had urged an independent investigation of the conduct and its cessation. The plaintiff has commenced this action against Stolt-Nielsen and its chairman, alleging, inter alia, that he was ethically and legally barred from rendering legal services to, and remaining in, the management of Stolt-Nielsen while the company's alleged illegal activities continued. The plaintiff's second revised, amended complaint (complaint) alleges that he was "constructively discharged" by Stolt-Nielsen, and that Stolt-Nielsen breached a covenant of good faith and fair dealing, and he seeks money damages as well as a declaratory judgment as to his rights to reveal confidential client information and materials protected by the attorney-client privilege both to law enforcement authorities and in furtherance of the prosecution of the present action. Last, the plaintiff alleges that defendant Samuel Cooperman, chairman of

Stolt-Nielsen, interfered with the plaintiff's reasonable business expectancies.

The defendants, in a joint motion, have moved to strike all five counts of the plaintiff's complaint for failure to state a claim on which relief may be granted. The present motion raises difficult questions of law that have, for the most part, not previously been litigated in Connecticut, involving the interplay and potential clash between rights under tort and contract law and the obligations and expectations associated with the practice of law and the attorney-client relationship. The court's analysis of a motion to strike is guided by well accepted standards. "The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted. . . . *Faulkner* v. *United Technologies Corp.*, 240 Conn. 576, 580, 693 A.2d 293 (1997); see Practice Book § 10-39. A motion to strike challenges the legal sufficiency of a pleading, and, consequently, requires no factual findings by the trial court. . . . We take the facts to be those alleged in the complaint . . . and we construe the complaint in the manner most favorable to sustaining its legal sufficiency. . . . Thus, [i]f facts provable in the complaint would support a cause of action, the motion to strike must be denied. . . . *Vacco* v. *Microsoft Corp.*, 260 Conn. 59, 64–65, 793 A.2d 1048 (2002). A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged. *Novametrix Medical Systems, Inc.* v. *BOC Group, Inc.*, 224 Conn. 210, 215, 618 A.2d 25 (1992)." (Internal quotation marks omitted.) *Fort Trumbull Conservancy, LLC* v. *Alves*, 262 Conn. 480, 498, 815 A.2d 1188 (2003).

## I

### COUNT ONE—CONSTRUCTIVE DISCHARGE

In the first count, the plaintiff alleges that Stolt-Nielsen's "ongoing criminal conduct created an impossible

employment situation for him" in that he was ethically barred from rendering legal services that would further such conduct and might be criminally liable because of his position in the management structure. According to the complaint, after the plaintiff brought this to Stolt-Nielsen's attention, the company did not cease its alleged criminal conduct, "thereby creating an intolerable work situation" for him.

In its motion to strike the first count, Stolt-Nielsen makes essentially three arguments. First, it contends that the plaintiff has failed to state a cause of action on which relief may be granted because a client has a paramount right to retain or discharge an attorney, and the attorney has no basis for a wrongful termination claim, whether it be termed a retaliatory or constructive discharge. Second, it argues that the plaintiff cannot state facts provable in court that would give rise to a claim for relief because such proof would violate his obligation to maintain client confidences and the attorney-client privilege. Third, Stolt-Nielsen claims that, as a professional matter, the plaintiff had no right to resign and, therefore, no claim of constructive discharge.

The parties have discussed at length and argued from, or against, a number of cases in other jurisdictions. A discussion of these cases is helpful both as background and to illuminate the issues. In *Balla* v. *Gambro, Inc.*, 145 Ill. 2d 492, 584 N.E.2d 104 (1991), the Supreme Court of Illinois held that an attorney employed as general counsel for the defendant, a distributor of kidney dialysis machines, could not sue the company for retaliatory discharge when he was discharged after advising the company he would do whatever was necessary to stop the company from selling dialysis machines not in conformance with federal regulations promulgated by the United States Food and Drug Administration. The *Balla* court set out several rationales for its decision. Under Illinois law, and not unlike Connecticut,

the tort known as retaliatory discharge is a limited exception to the general rule that in the absence of a contract, the employer-employee relationship is at-will, meaning either party may terminate the relationship at any time. The retaliatory discharge exception applies when the termination of employment undermines an important public policy. The Illinois Supreme Court found that the public policy, that of saving lives, was already protected by the obligation of the plaintiff under the Rules of Professional Conduct in effect in Illinois to reveal confidential information to the extent necessary to prevent a client from committing an act that would result in death or serious injury. Id., 501–502 (referring to rule 1.6 (b) of the Illinois Rules of Professional Conduct). The court rejected the plaintiff's argument that he was faced with a "Hobson's choice" between violating his obligations as a lawyer and risking the loss of his professional license or risking the loss of a full-time job and benefits. The court said there was no choice to be made: the in-house counsel, the plaintiff must follow the Rules of Professional Conduct. It concluded: "An attorney's obligation to follow these Rules of Professional Conduct should not be the foundation for a claim of retaliatory discharge." Id., 505. The Illinois Supreme Court also stressed that if in-house attorneys had the right to sue for wrongful discharge, it would have an adverse effect on the relationship between attorney and client and would chill the free exchange of communications between them. Id., 503–504.

There are two New York cases holding against in-house attorneys' wrongful discharge claims. In *Eckhaus* v. *Alfa-Laval, Inc.* 764 F. Sup. 34 (S.D.N.Y. 1991) the federal District Court rendered summary judgment and dismissed a complaint by the plaintiff, the defendant's former general counsel, seeking damages for defamation. The ground for dismissal was that the plaintiff's

allegations and evidence revealed client confidences in violation of Disciplinary Rule 4-101 (DR 4-101)[1] of New York's Code of Professional Responsibility. "[The plaintiff's] affidavit makes clear his effort to achieve, by a defamation action, an adjudication of the disputes underlying his resignation from Alfa-Laval. Permitting disclosure of client confidences and secrets under these circumstances would impinge upon the sanctity of the attorney-client relationship in a manner not contemplated by the Disciplinary Rules." Id., 38.

Similarly, in *Wise* v. *Consolidated Edison Co.*, 282 App. Div. 2d 335, 723 N.Y.S.2d 462 (2000), leave to appeal denied, 96 N.Y.2d 717, 730 N.Y.S.2d 790, 756 N.E.2d 78 (2001), the Appellate Division ordered an in-house counsel's wrongful termination complaint dismissed because the case would require disclosure of the defendant's confidential information in violation of DR 4-101.

*Douglas* v. *DynMcDermott Petroleum Operations Co.*, 144 F.3d 364 (5th Cir. 1998), cert. denied, 525 U.S. 1068, 119 S. Ct. 798, 142 L. Ed. 2d 660 (1999), involved an appeal of a jury verdict awarding damages under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., to a former in-house attorney who had been discharged for disclosing confidential client information in violation of the Louisiana Rules of Professional Conduct. Using a balancing test, the court held: "We therefore conclude that when an attorney's Title VII right to oppose her employer-client's allegedly discriminatory practices by disclosing confidential information contrary to the ethical obligations of the profession is balanced against her employer-client's right to ethical

[1] There are important differences between DR 4-101 in effect in New York and some other states and the corresponding provisions of rule 1.6 of the Rules of Professional Conduct in effect in Connecticut, Illinois and elsewhere. These differences are discussed subsequently in this memorandum of decision.

representation and the profession's interest in assuring the ethical conduct of its members, the employer's and the profession's interests must prevail. Given the obligations to which an attorney agrees when she joins the profession and when she accepts employment, and the importance of the duties of confidentiality and loyalty to the employer-client and to the integrity of the profession, we hold as a matter of law that conduct that breaches the ethical duties of the legal profession is unprotected under Title VII." Id., 376.

Another line of cases allows in-house attorneys to sue their former employers for wrongful termination. Recently, in *Crews* v. *Buckman Laboratories International, Inc.*, 78 S.W.3d 852 (Tenn. 2002), the Tennessee Supreme Court upheld a cause of action for retaliatory termination when an associate general counsel was discharged for reporting to the licensing authority that her immediate supervisor, the general counsel, was not admitted to practice law in Tennessee. The *Crews* court rejected the rationale set forth in *Balla* that the public interest was protected by the existence of ethical rules governing lawyer conduct, noting the economic pressures attendant on in-house counsel, with only one client, to conform to that client's wishes. Id., 860–61. The court also disagreed that allowing a retaliatory discharge action would inhibit attorney-client communications because there were already several instances when an attorney is ethically permitted or mandated to reveal confidential information. Id., 861.

In *Burkhart* v. *Semitool, Inc.*, 300 Mont. 480, 493–94, 5 P.3d 1031 (2000), the Montana Supreme Court, while recognizing that generally a client could terminate an attorney's employment without consequences, found the situation different and the general rule not applicable where the attorney is the employee of the client.

The court held that by making the attorney an employee, the employer-client granted the attorney certain protections, including the statutory protection in Montana found in the Wrongful Discharge from Employment Act.

There are two other cases pertinent to the court's consideration. In *General Dynamics Corp.* v. *Superior Court*, 7 Cal. 4th 1164, 876 P.2d 487, 32 Cal. Rptr. 2d 1 (1994), the Supreme Court of California held that an in-house attorney could bring a retaliatory discharge action against his employer but that the right was conditioned to the extent that the claim be proven "without breaching the attorney-client privilege or unduly endangering the values lying at the heart of the professional relationship." Id., 1169.

In *GTE Products Corp.* v. *Stewart*, 421 Mass. 22, 653 N.E. 2d 161 (1995), the Supreme Judicial Court of Massachusetts also recognized an in-house counsel's right to sue for wrongful discharge, but only in narrow and carefully delineated circumstances. "To the extent that in-house counsel's claim depends on an assertion that compliance with the demands of the employer would have required the attorney to violate duties imposed by a statute or the disciplinary rules governing the practice of law in the Commonwealth, that claim will only be recognized if it depends on (1) explicit and unequivocal statutory or ethical norms (2) which embody policies of importance to the public at large in the circumstances of the particular case, and (3) the claim can be proved without any violation of the attorney's obligation to respect client confidences and secrets." Id., 29–30. The court went on to determine that the in-house counsel, who did not claim he was discharged, did not establish sufficient facts in opposing a summary judgment motion to sustain a constructive discharge claim.

With these cases as background, the court turns to the issues raised in the plaintiff's first count alleging

constructive discharge. As a general rule, an employment relationship, absent a contract to the contrary, is terminable at the will of either party at any time and for any reason. *Torosyan* v. *Boehringer Ingelheim Pharmaceuticals, Inc.*, 234 Conn. 1, 14, 662 A.2d 89 (1995). Connecticut law recognizes an exception to this at-will rule and has approved a common-law cause of action for wrongful discharge when an employee is discharged for reasons that contravene important public policies. See *Sheets* v. *Teddy's Frosted Foods, Inc.*, 179 Conn. 471, 427 A.2d 385 (1980); see also General Statutes §§ 31-51m, 31-51q. In *Daley* v. *Aetna Life & Casualty Co.*, 249 Conn. 766, 734 A.2d 112 (1999), our Supreme Court described the public policy exception as involving the violation of an explicit statutory or constitutional provision or a contravention of a judicially conceived notion of public policy. Id., 798.

The concept of constructive discharge is a resignation or withdrawal from employment that is forced and involuntary. "'Constructive discharge of an employee occurs when an employer, rather than directly discharging an individual, *intentionally* creates an intolerable work atmosphere that forces an employee to quit involuntarily.'" (Emphasis added.) *Brittell* v. *Dept. of Correction*, 247 Conn. 148, 178, 717 A.2d 1254 (1998), quoting *Chertkova* v. *Connecticut General Life Ins. Co.*, 92 F.3d 81, 89 (2d Cir. 1996). Intolerable working conditions exist when they are so unpleasant or difficult that a reasonable person working in them would feel compelled to resign. *Brittell* v. *Dept. of Correction*, supra, 178. The test involves more than the employee's subjective opinion; therefore, it is an objective standard. *Seery* v. *Yale-New Haven Hospital*, 17 Conn. App. 532, 540, 554 A.2d 757 (1989).

The first two issues facing the court are: one, whether the plaintiff has sufficiently pleaded a claim of "constructive" discharge and, if so; two, whether the dis-

charge falls within the ambit of discharges forbidden by public policy considerations.

With regard to whether the plaintiff was constructively discharged, Stolt-Nielsen points out that the plaintiff does not allege that he was threatened, reprimanded or the subject of any punitive or pressure action by Stolt-Nielsen and does not allege that he was asked to resign. The plaintiff alleges, however, that he was ethically barred from rendering legal services or advice that would cause or aid ongoing criminal conduct and that he would be criminally liable if he continued in his management position with knowledge that Stolt-Nielsen's business involved conduct in violation of United States and international law. Assuming the truth of these allegations, the court finds that the plaintiff was put into an intolerable situation by intentional acts of Stolt-Nielsen and, therefore, has sufficiently alleged facts, which, if proven, would establish that his resignation was tantamount to a discharge.

In addition, the plaintiff asserts that Stolt-Nielsen's "criminal" conduct, which allegedly forced his resignation, was violative of public policy and, therefore, his claim is stated sufficiently to give rise to a viable cause of action under *Sheets* and *Daley*.

Stolt-Nielsen does not contest that criminal conduct violates public policy. Rather, it makes a policy argument of its own; to wit, the unsubstantiated allegations of a former in-house attorney should not give rise to a cause of action that decimates the valid and time tested values inherent in the professional attorney-client relationship and the policies that promote it. Stolt-Nielsen contends that to recognize a cause of action for constructive discharge every time a corporate lawyer-employee disagreed with his employer over a point of law, or was unsatisfied with a corporate response to the lawyer's proposals for remedial action, would wreak

havoc on the attorney-client relationship. To allow the attorney to sue for damages based on the perceived illegality and then disclose privileged and confidential client information to make out such claims would have a devastating effect on attorney-client relations. Stolt-Nielsen, therefore, urges the court to adopt and elevate the policy that clients may discharge attorneys at will.

The court concludes that there is no persuasive rationale for barring actions per se by in-house attorneys for wrongful termination or constructive discharge. While the principle that a client has the right to discharge an attorney is sound when the attorney-client relationship is the sole relationship between the parties, even then it is not a completely unfettered right, as the discharged attorney has a right to earned fees, and there may be other adverse consequences in the circumstances of a litigated matter when a court denies a continuance or postponement to allow a client to obtain new counsel. When there is a concomitant relationship, as in the present case, of employer-employee, the right to discharge an attorney must be balanced with rights emanating from that second relationship.

This court sees no rational basis for denying an employee-attorney the right available to other employees to sue for wrongful or constructive discharge when the action is premised on protecting a well defined public interest. This conclusion is based in part on the understanding that an in-house attorney may, as alleged here, be professionally obligated to resign his position, a burden not often shared by employees who are not attorneys. The potentially higher price an attorney-employee may have to pay argues for providing them with at least the same remedy available to other employees. This consideration, of course, runs counter to the position of the Illinois Supreme Court in *Balla*, which found that the duty to resign alone was sufficient protection to the public policy. While recognizing that it is the

policy, not the person's job, which the tort of wrongful discharge was created to protect; see *General Dynamics Corp.* v. *Superior Court,* supra, 7 Cal. 4th 1181; one must realize that the two are not necessarily separable and it is perfectly logical to conclude that providing some limited recourse can only strengthen an in-house attorney's resolve to maintain his professional obligations, rather than silently conform. This can only enhance the protection of the public interest.

An additional consideration is that providing a limited right of action to an in-house lawyer under these circumstances should not, in contrast to Stolt-Nielsen's claims, unduly impair the specific attorney-client relationship or the concept of the relationship. It seems likely that the attorney-client relationship, which has been subjected to the discharge of, or resignation by, an attorney, is already in considerable disarray. For the same reason it would not appear to impair significantly a client's ability to choose counsel. See 1 Restatement (Third), Law Governing Lawyers § 32, comment (b), pp. 228–29 (2000).

This conclusion is not inconsistent with a recent federal District Court decision construing Connecticut law. In *Lewis* v. *Nationwide Mutual Ins. Co.,* Docket No. 3: 02 CV512 (RNC) (D. Conn. 2003), the federal District Court refused to dismiss a wrongful discharge claim by an attorney-employee who alleged that he was discharge by his employer, an insurance company, because he refused to permit the company to interfere with the exercise of his independent professional judgment on behalf of the insured clients he was assigned to represent. The court held that the ethical obligation set forth in Connecticut's Rules of Professional Conduct forbidding a nonclient from directing or interfering with a lawyer's professional judgment could reflect a public policy of sufficient clarity and force to justify a claim of wrongful discharge. While recognizing that an attorney

may state a claim against his employer, *Lewis* is distinguishable from the present case because the employer was not the client.

The second argument of Stolt-Nielsen is that the plaintiff cannot establish the purported factual basis for his claim of constructive discharge without violating his professional obligations. Stolt-Nielsen posits, therefore, that he cannot allege provable facts to support a claim for relief. Put another way, it is argued that the plaintiff can prove no set of facts that would entitle him to relief. Stolt-Nielsen refers to the well established rules that make up the attorney-client privilege and the ethical and professional obligations of an attorney to maintain the confidentiality of information gained through the representation of a client. Stolt-Nielsen argues, with what appears to be considerable logic, that the underlying elements of the plaintiff's claims, i.e., the alleged criminal activities and the response, or lack thereof, to the plaintiff's requests to correct and to rectify, must necessarily involve the divulgence of either privileged communications, confidential information and, most likely, both.

The plaintiff responds in part that the issue of the existence and applicability of evidentiary privileges such as the attorney-client privilege is raised prematurely and is not a proper basis to determine a motion to strike, citing *First Federal Savings & Loan Assn. of Rochester* v. *Nielsen*, Superior Court, judicial district of New Haven, Docket No. 326502 (September 16, 1992) (*Celotto, J.*). This may be true; however, an attorney's confidentiality obligations arise from ethical rules that govern professional conduct at all times and are more than a testimonial privilege. It is appropriate, therefore, to consider at this time whether these obligations bar the plaintiff from stating a claim.

The parties have spent considerable time and effort analyzing and briefing the confidentiality obligations of

an attorney. The contentions of Stolt-Nielsen that the plaintiff is prohibited from proving facts to support his allegations by the confidentiality rules may have substantial force as evidenced by many of the cases discussed previously. The court concludes, however, that in the context of the present case, a motion to strike cannot be the setting to decide this issue. A motion to strike may only raise issues limited to the legal viability of allegations set forth in the pleading sought to be stricken. It bears repeating that a trial court should not make factual findings in determining a motion to strike. *Vacco* v. *Microsoft Corp*, supra, 260 Conn. 64–65.

Whether the plaintiff is precluded from offering evidence to support his claim by the rules of his profession hinges on certain facts not alleged or inferable from the complaint. The complaint alleges that he is a resident of, and Stolt-Nielsen has a principal place of business in, Connecticut. The pleading is silent, however, as to what jurisdiction, or jurisdictions, the plaintiff is admitted to practice in, and specifically by what set of professional rules his activities are governed. While information was offered at the oral argument of this motion that the plaintiff was a member of the bars of the state of New York and the state of Louisiana, and that his legal work for Stolt-Nielsen took place in Connecticut, these unpleaded factual matters are not appropriately determined in the context of a motion to strike. Further, the significant differences between relevant portions of the professional conduct rules that might apply to the plaintiff probably necessitate a choice of law analysis, which, in itself, requires the finding of facts. See *General Dynamics Corp.* v. *Superior Court*, supra, 7 Cal. 4th 1190 n.6. For instance, in 1986, Connecticut adopted a version of the Model Rules of Professional Conduct drafted by the American Bar Association. Connecticut's rule 1.6 provides in general that a lawyer shall not reveal information relating to the representation of a client.

One exception to this prohibition is that such information may be revealed to establish a "claim" in a controversy between the lawyer and client. Rules of Professional Conduct 1.6 (d). A recent American Bar Association opinion has stated that a "claim" may include "a retaliatory discharge or similar claim by an in-house lawyer against [an] employer." A.B.A. Committee on Ethics and Professional Responsibility, Formal Op. 424, September 22, 2001.

On the other hand, New York State has not adopted the Model Rules but has retained a version of the Code of Professional Responsibility and its attendant disciplinary rules approved by the American Bar Association in the early 1970s. In contrast to Connecticut's rule 1.6, New York's analogous DR 4-101, 22 NYCRR 1200.19, contains a narrower exception to the requirement of confidentiality allowing an attorney to reveal confidences or secrets only to collect a lawyer's fee. 22 NYCRR 1200.19 (c) (4).

Determination of what professional rules apply to the plaintiff and how they affect his ability to prove the facts essential to his claim is critical to the resolution of the present case. It is perhaps unfortunate that the determination cannot be made on this motion to strike, but the reasons it cannot have been set forth previously. The court will work with the parties and counsel to consider some expeditious means to bring the issue to a head—perhaps a motion for partial summary judgment.

Stolt-Nielsen also argues that the plaintiff's claim for constructive discharge may not lie because rule 1.13 of Connecticut's Rules of Professional Conduct prohibited him from resigning his representation of the company. Having resigned improperly, Stolt-Nielsen contends, the plaintiff is barred from asserting that he was constructively discharged.

Rule 1.13 states that when an in-house attorney is confronted with criminal activity by an officer or employee of a corporation that is likely to be imputed to the corporation and cause it substantial injury, the attorney should proceed in the best interest of the corporation. Any measures he takes should minimize the risk of disclosing confidential information. "Such measures may include among others: (1) Asking reconsideration of the matter; (2) Advising that a separate legal opinion on the matter be sought for presentation to appropriate authority in the organization; and (3) Referring the matter to higher authority in the organization, including . . . referral to the highest authority that can act in behalf of the organization . . . ." Rules of Professional Conduct 1.13 (b). If the highest authority acts or refuses to act, in clear violation of the law, the attorney may resign. Rules of Professional Conduct Rule 1.13 (c).

Stolt-Nielsen argues that the plaintiff does not allege that he went to its board of directors, to the independent directors or to any "higher authority," and without having taken such steps, he was not permitted to resign.

Accepting for the moment that Connecticut's Rules of Professional Conduct apply, the court finds that there are sufficient allegations in the complaint that the plaintiff made efforts to deal with the alleged criminal conduct to permit his resignation. He alleges that he sought to have Stolt-Nielsen cease its criminal conduct and to undertake "an independent investigation of such criminality" and that the company refused. These allegations and the reasonable inferences drawn therefrom are enough to satisfy rule 1.13 (b), which is not cast in mandatory language in any event.

## II

### COUNT TWO—BREACH OF CONTRACT

In the second count of his complaint, the plaintiff alleges that Stolt-Nielsen represented to its employees

that it would comply with the law, wanted its employees to comply with the law and to ensure the company's compliance, and that employees would not be asked to violate the law. The plaintiff alleged that these representations were set forth in the Stolt-Nielsen antitrust compliance handbook and at a seminar. He alleges also that such representations to him were inherent in his position as general counsel responsible for implementation of compliance programs. The thrust of the second count is that Stolt-Nielsen breached its representations to him and breached the implied covenant of good faith and fair dealing inherent in the implied contract of employment.

A cause of action by an employee for an employer's breach of the implied covenant of good faith and fair dealing has been recognized in Connecticut when there is an allegation, as here, that termination of employment arises from some impropriety involving a violation of public policy. *Magnan* v. *Anaconda Industries, Inc.*, 193 Conn. 558, 572, 479 A.2d 781 (1984).

Stolt-Nielsen focuses most of its motion to dismiss the count on the same arguments supporting its attack on the first count. It also adds two other arguments. First, the existence of a legal compliance program is hardly a representation that a corporation will always be in compliance with the law because the program itself is recognition that lawful conduct is not always a given in the context of complex international trade regulations and antitrust law. Second, it contends that it would be poor policy to sanction a breach of contract claim any time a businessman told an in-house lawyer about activities or conduct that was arguably illegal.

As stated in the discussion of the first count, it is premature to assess whether the plaintiff can prove facts to state a claim for relief under this count because of his confidentiality restraints. With respect to the

argument that a compliance program is not a representation that the plaintiff could rely on, this argument goes to the weight of the proof of the plaintiff's case and is not a basis on which to strike the count. The policy argument is one that also goes to the issue of confidentiality and cannot be decided now. The motion to strike the second count, therefore, is denied.

## III

### TORTIOUS INTERFERENCE

In his third count, the plaintiff claims that Cooperman, the chairman of Stolt-Nielsen, tortiously interfered with his employment relationship and expectancies with Stolt-Nielsen. The parties agree that the essential elements of a tortious interference claim are: (1) the existence of a contractual or other relationship; (2) the defendant's knowledge of the relationship; (3) his intent to interfere with it; (4) the interference was tortious; and, (5) it caused a loss. *Appleton* v. *Board of Education*, 254 Conn. 205, 212–13, 757 A.2d 1059 (2000).

The plaintiff has pleaded the necessary elements of this cause of action. While Stolt-Nielsen argues with some cogency that it strains credulity to impute to Cooperman the ability to foresee and to intend that his actions to continue Stolt-Nielsen's criminal conduct would have the consequence of forcing the plaintiff to resign, the court must deal here with allegations, not persuasiveness. The allegation that "Cooperman caused the constructive termination of [the plaintiff's] employment with [Stolt-Nielsen] with the intention of and with the effect of interfering with [the plaintiff's] reasonable business expectations" is sufficient.

## IV

### DECLARATORY JUDGMENT COUNTS

In his fourth and fifth counts, the plaintiff seeks declaratory relief. In the fourth count, he alleges that

Stolt-Nielsen has sought to prevent him from disclosing the company's ongoing illegality to appropriate government agencies and has threatened to bring a civil action or seek professional sanctions against him if he does. The declaratory judgment sought in the fourth count is "that [the plaintiff] is not precluded by any common law or contractual duty arising from his employment, nor any ethical obligation arising from his position as defendant's general counsel, from disclosing [Stolt-Nielsen's] ongoing criminality to appropriate government agencies charged with regulating such conduct."

In the fifth count, the plaintiff alleges that Stolt-Nielsen has sought to prevent him from disclosing confidential information protected by the attorney-client privilege and by professional rules in support of his claims in the present case, and has threatened to sue him if he does so disclose. The declaratory judgment sought in the fifth count is "that [the plaintiff] is not precluded by any common law or contractual duty arising from his employment, nor any ethical obligation arising from his position as defendant's general counsel, from disclosing otherwise privileged information as necessary to establish his claims against [Stolt-Nielsen] in this action."

Practice Book § 17-55 and General Statutes § 52-29 allow the Superior Court to entertain declaratory judgment claims. Practice Book § 17-55 (2) requires that there be "an actual bona fide and substantial question or issue in dispute . . . ." A declaratory judgment action "is a special proceeding . . . [that] requires the existence of an actual bona fide and substantial question in dispute *which requires settlement between the parties.*" (Emphasis added.) *Kiszkiel* v. *Gwiazda,* 174 Conn. 176, 180–81, 383 A.2d 1348 (1978) A declaratory judgment procedure "may not be utilized merely to secure advice on the law . . . or to secure the construction of a statute if the effect of that construction

will not affect a plaintiff's personal rights . . . ." *Horton* v. *Meskill*, 172 Conn. 615, 627, 376 A.2d 359 (1977).

The considerations just cited touch on the issue of standing and, consequently, on the court's subject matter jurisdiction. A careful review of the fourth count reveals no specific allegation that the plaintiff has the intention or desire to report allegations of Stolt-Nielsen's "criminality" to any government authority. In the context of this complaint, such an omission seems almost studied. In paragraph one of the complaint, the plaintiff states that he is seeking a declaratory judgment of the lawfulness of his reporting ongoing criminal activity to governmental authorities. In paragraph twenty-four of the fourth count, he alleges that there is no common-law, contractual or ethical prohibition to his reporting such activity to a governmental agency because Stolt-Nielsen's criminal conduct is "likely to result in substantial injury to the financial interest or property of another." This language tracks the provisions of rule 1.6 (c) (1) of the Rules of Professional Conduct in effect in Connecticut, which allow an attorney to reveal confidential information under certain circumstances, but does not require it.

In the absence of any specific allegation that the plaintiff is about to, or has, voluntarily gone to the authorities, or even that he has a desire to do so, the fourth count does not allege the existence of any real dispute between the parties to the present case. See *Milford Power Co., LLC* v. *Alstom Power, Inc.*, 263 Conn. 616, 822 A.2d 196 (2003). Consequently, the count is ordered stricken.

The fifth count, seeking a declaration that there is no common-law, contractual or ethical bar to the plaintiff's disclosure of confidential information in pursuit of his claims against the defendants, presents a different situation. At the outset, there is no issue of standing or

ripeness of the dispute between the parties. The existence of this action and this motion establish the reality of the disagreement. The court, however, questions the necessity of the declaratory relief sought in the fifth count. The issues relating to whether the plaintiff may use confidential information in pursuit of his claims against Stolt-Nielsen and Cooperman are at the heart of the first three counts of his complaint and will have to be resolved in order to determine these claims finally.

Practice Book § 17-55 allows a declaratory judgment action to be maintained if certain conditions have been met. One of those conditions is: "In the event there is another form of proceeding that can provide the party seeking the declaratory judgment immediate redress, the court is of the opinion that such party should be allowed to proceed with the claim for declaratory judgment despite the existence of such alternative procedure." Practice Book § 17-55 (3).

According to the Supreme Court, "a successful motion to strike an action for a declaratory judgment upon the ground of available alternative means of redress . . . must show that the court could not in the exercise of sound discretion permit the action to proceed." *England* v. *Coventry*, 183 Conn. 362, 365, 439 A.2d 372 (1981). The Supreme Court has pointed out that a court should not entertain a declaratory judgment action "when an ordinary action affords a remedy as effective, convenient and complete . . . ." *Connecticut Savings Bank* v. *First National Bank & Trust Co.*, 133 Conn. 403, 410, 51 A.2d 907 (1947).

The court does not perceive any additional benefit to either party or to the judicial system by retaining the declaratory judgment claim contained in the fifth count. The issues in that count, if applicable to these parties, must be resolved in reaching or determining the issues

in the first three counts. The court, therefore, exercises its discretion to strike the fifth count.

## V

## CONCLUSION

The defendants' joint motion to strike counts four and five of the plaintiff's complaint is granted. The remainder of the motion is denied.