******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

APPENDIX

## JULIAN POCE ET AL. *v.* O & G INDUSTRIES, INC., ET AL.*

Superior Court, Judicial District of Hartford File No. CV-17-6074254-S
Memorandum filed December 5, 2017

*Proceedings*

Memorandum of decision on motion to strike. *Motion granted in part.*

*Austin Berescik-Johns* and *Paul Stewart Levin,* for the plaintiffs.

*Michael S. Lynch,* for the named defendant.

*Michael J. Dugan* and *Eric R. Schwerzmann,* for the defendant Southern Middlesex Industries, Inc.

*Opinion*

NOBLE, J. "For more than 150 years, the law in Connecticut, and elsewhere, has limited tort liability to cases involving physical harm to person or property." (Internal quotation marks omitted.) *Lawrence* v. *O & G Industries, Inc.*, 319 Conn. 641, 646, 126 A.3d 569 (2015). The motions to strike of the defendants, O & G Industries, Inc. (O & G), and Southern Middlesex Industries, Inc. (SMI), Entries ## 109 and 120 respectively, assert that the harms alleged in the plaintiffs' complaint—the increased risk of contracting asbestos related pulmonary disease and future medical monitoring as a result of exposure to asbestos by the tortious conduct of the defendants—fail to state a claim upon which relief may be granted because they do not represent an actual injury or actionable harm. The court agrees that claims of negligence, premises liability and recklessness require actual physical injury and grants the motion to strike as to those counts. Because a claim for negligent infliction of emotional distress, however, does not require a present bodily injury, the motions to strike those counts are denied.

## FACTS

The plaintiffs, Julian Poce, Skerdinand Xhelaj, Michael Meredith, Erjon Goxhaj, and Fatjon Rapo, commenced this action on December 27, 2016, against O & G and SMI. The thirty count complaint alleges the following facts. The plaintiffs are mason laborers employed by Connecticut Mason Contractors, Inc. While working on a project at Wethersfield High School at 411 Talcott Hill Road in Wethersfield (project site), the plaintiffs were repeatedly exposed to asbestos. The work areas designated by the project manager, O & G, entailed the disturbing of floors, walls and ceilings which, unbeknownst to the plaintiffs, contained asbestos.

O & G had actual and/or constructive knowledge of the dangerous project site conditions and premises defects present on the property, "including asbestos and PCBs," and had the authority to remediate the hazards present; controlled and supervised all phases of the work at the project site; exercised possession and control of the project site, including the premises where the plaintiffs were injured; and had the authority to prevent or and/or suspend work in areas of the building containing asbestos. Areas where the plaintiffs performed work were not properly sampled, remediated and tested before the plaintiffs became exposed to asbestos, and the plaintiffs were not provided with, or required to wear, personal protective equipment.

During the time that the plaintiffs performed work at the project site, the asbestos conditions were disturbed in such a manner making it highly probable that toxic substances would be breathed, thus repeatedly

exposing the plaintiffs to the asbestos without protective gear, hazard reduction training, or advance warning. O & G was aware of the repeated exposure despite the fact that the contracts executed between the town of Wethersfield, O & G, and Connecticut Mason Contractors, Inc., required O & G to observe safety protocols and procedures so as to avoid injury and occupational exposures to the plaintiffs. O & G was aware that the plaintiffs were masons, and not experienced and trained in asbestos protection. O & G did not arrange adequately for asbestos protection or hazard reduction training at the project site. None of the laborers were provided with, or advised of the need to use, asbestos protection at the project site, and O & G had advised the plaintiffs' employer that laborers would only be dispatched to areas of the building that did not contain asbestos, or areas where suitable asbestos remediation had already been accomplished.

During this time period, SMI undertook specified demolition work involving asbestos remediation on the premises. SMI's conduct contributed to the failure to follow reasonable protocols by failing to properly cordon off what should have been regulated work areas to assure that the plaintiffs were not inadvertently exposed to the hazardous materials being remediated. SMI failed to adequately test and sample the materials being removed so that substances, and the nature of exposures, could be adequately documented; and, SMI failed to provide advance warning to the plaintiffs so that they could protect themselves from potentially hazardous exposure, given the proximity of the plaintiffs' work area to the demolition and remediation underway.

In counts one through twenty, each plaintiff alleges their own separate counts of negligence (counts one through five), negligent infliction of emotional distress (counts six through ten), premises liability (counts eleven through fifteen) and recklessness (counts sixteen through twenty) against O & G. Counts twenty-one through thirty separately allege counts of negligence (counts twenty-one through twenty-five) and negligent infliction of emotional distress (counts twenty-six through thirty) against SMI. Each count contains an allegation that the respective plaintiffs were repeatedly exposed to known carcinogens requiring medical evaluations and lifetime medical monitoring, an increased risk of contracting asbestos related pulmonary disease and/or cancer, and will be required in the future to spend sums of money for medical evaluation and medical monitoring in the event that "asbestos and/or PCP[1] related disease becomes active and will be the source of continuing pain, mental and emotional distress." The counts alleging the negligent infliction of emotional distress additionally allege that O & G and SMI created an unreasonable risk of causing emotional distress to the plaintiffs severe enough that it might result in illness or bodily harm, and that it was foreseeable that such

distress might result from the defendants' conduct, which was the cause of the plaintiffs' emotional distress.

On March 29, 2017, O & G moved to strike counts one through twenty of the plaintiffs' complaint on the ground that, as a matter of law, the complaint fails to state claims upon which relief can be granted. In its view, the plaintiffs have failed to allege any facts sufficient to support their claims of negligence, premises liability, recklessness and emotional distress. In their memorandum of law, O & G argues that the plaintiffs have not alleged an actionable harm, because the plaintiffs fail to allege that they suffer from present injury. Rather, the complaint merely alleges an increased risk of future harm, which is insufficient under any of the theories alleged, including the counts asserting a claim for the negligent infliction of emotional distress. Moreover, the plaintiffs are not without remedy, as the statute of limitations in General Statutes § 52-577c, which the legislature enacted specifically for asbestos related illness, does not begin to run until injury is discovered, providing the plaintiffs with a cause of action should they manifest symptoms of asbestos related diseases in the future.

On May 15, 2017, the plaintiffs filed their objection, arguing that the harms they allege constitute actual injuries as defined by Connecticut case law, and that each respective claim alleges elements of damage and actual harm required in order to recover under those claims. In support, the plaintiffs cite to the recent matter of *R.T. Vanderbilt Co.* v. *Hartford Accident & Indemnity Co.*, 171 Conn. App. 61, 114–18, 156 A.3d 539 (2017), which explicitly defines asbestos exposure as an injury and a harm, and impliedly defines asbestos exposure as an actionable harm. This, the plaintiffs argue, leaves no doubt that a person is legally injured at the point of exposure to asbestos, thus satisfying the element of harm necessary to adequately plead the claims alleged.

On May 19, 2017, the plaintiff filed their first amended complaint as to counts twenty-six through thirty. Thereafter, on June 13, 2017, in a motion virtually identical to that of O & G, SMI moved to strike counts twenty-one through thirty of the plaintiffs' complaint on the ground that the plaintiffs, as a matter of law, fail to state claims upon which relief can be granted. Like O & G, SMI argues in its memorandum of law that the plaintiffs' claims do not allege actual harm, only exposure to asbestos, which places the plaintiffs at increased risk for contracting asbestos related diseases, which will require future medical evaluations and monitoring.

The plaintiffs filed their objection to SMI's motion on July 5, 2017, arguing that the harms alleged constitute actual injuries pursuant to Connecticut case law, and their claims meet the legal elements required in order

to recover under theories of negligence and negligent infliction of emotional distress.

On August 2, 2017, O & G replied to the plaintiffs' objection by distinguishing *R.T. Vanderbilt Co.* from the present matter. *R.T. Vanderbilt Co.* was a declaratory judgment action, whereby the plaintiff sought a determination as to which of its general liability insurance carriers were obligated to defend and indemnify the claims against it in light of multiple lawsuits alleging injuries from exposure to asbestos. Id., 75. The Appellate Court was asked to interpret the contractual language of the various policies in order to determine when insurance coverage was triggered for asbestos related injuries. Id., 75–76. The Appellate Court did not define asbestos exposure as a legally compensable injury, nor did it consider that issue, as all underlying lawsuits alleged that the plaintiffs suffered from asbestos related diseases such as mesothelioma, other asbestos related cancer, and asbestosis. See id. The Appellate Court only determined when coverage was triggered and did not make any determinations as to when asbestos exposure becomes a legally compensable injury; rather, it interpreted contractual terms, specifically the meaning of the word "injury," contained in policies of insurance, and found that there are physical consequences of asbestos exposure which fall within the definition of "injury." (Internal quotation marks omitted.) Id., 118–23. O & G points out, moreover, that in the present case, the plaintiffs are not alleging present physical injuries or an asbestos related disease, only exposure to asbestos, which is not an actionable harm.

### LEGAL STANDARD

"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted." (Internal quotation marks omitted.) *Fort Trumbull Conservancy, LLC* v. *Alves*, 262 Conn. 480, 498, 815 A.2d 1188 (2003).

"[A] motion to strike challenges the legal sufficiency of a pleading and, consequently, requires no factual findings by the trial court . . . . [The court] construe[s] the complaint in the manner most favorable to sustaining its legal sufficiency . . . . Thus, [i]f facts provable in the complaint would support a cause of action, the motion to strike must be denied . . . . Moreover . . . [w]hat is necessarily implied [in an allegation] need not be expressly alleged . . . . It is fundamental that in determining the sufficiency of a complaint challenged by a defendant's motion to strike, all well-pleaded facts and those facts necessarily implied from the allegations are taken as admitted . . . . Indeed, pleadings must be construed broadly and realistically, rather than narrowly and technically." (Internal quotation marks omitted.) *Geysen* v. *Securitas Security Services USA, Inc.*, 322 Conn. 385, 398, 142 A.3d 227

(2016). "If any facts provable under the express and implied allegations in the plaintiff's complaint support a cause of action . . . the complaint is not vulnerable to a motion to strike." *Bouchard* v. *People's Bank*, 219 Conn. 465, 471, 594 A.2d 1 (1991). "In ruling on a motion to strike the trial court is limited to considering the grounds specified in the motion." *Meredith* v. *Police Commission*, 182 Conn. 138, 140, 438 A.2d 27 (1980).

## ANALYSIS

### Negligence, Premises Liability and Recklessness

The negligence counts directed at both O & G and SMI, as well as the premises liability and recklessness counts directed solely against O & G, contain common allegations of injury, essentially, an increased risk of contracting asbestos related diseases and medical monitoring. The complaint itself does not allege any express physical manifestations of symptoms of any asbestos related disease.

As an initial matter, it is necessary to review the elements of a claim in negligence. The long-standing, well accepted elements of a negligence action are "duty; breach of that duty; causation; and actual injury." *Ruiz* v. *Victory Properties, LLC*, 315 Conn. 320, 328, 107 A.3d 381 (2015). The existence of an "actual injury," contrasted with a legal technical injury or an invasion of a legal right, is a sine qua non for a claim of negligence. *Right* v. *Breen*, 277 Conn. 364, 377, 890 A.2d 1287 (2006). The Supreme Court in *Right* addressed the question of whether a plaintiff in a negligence action must be awarded nominal damages, thereby making the defendant potentially liable for costs, when the defendant admits liability but denies causing an injury and the plaintiff fails to prove that he suffered an actual injury. Id., 365–66. It concluded that an "actual injury" was required. Id. While the *Right* decision did not expressly define "actual injury," indeed the parties' briefs or the court's research has not revealed a definitive definition by a Connecticut appellate court, it held that "bruises, contusions and physical injuries constitute actual damage . . . ." (Internal quotation marks omitted.) Id., 375. The defendants argue that increased risk of contracting asbestos related diseases and medical monitoring alleged by the plaintiffs is not an actual injury or actionable harm. They cite to two Superior Court decisions, *Bowerman* v. *United Illuminating*, Superior Court, judicial district of New London, Docket No. X04-CV-94-0115436-S, 1998 WL 910271 (December 15, 1998) (23 Conn. L. Rptr. 589),, and *Goodall* v. *United Illuminating*, Superior Court, judicial district of New London, Docket No. X04-CV-95-0115437-S, 1998 WL 914274 (December 15, 1998), which held that exposure to asbestos, absent manifestation of symptoms of any asbestos related disease, does not constitute actionable harm.[2] The dispositive question decided by Judge Koletsky in those cases was whether "the scarring of lung

tissue and implantation of asbestos fibers in the lungs due to asbestos exposure, as alleged in the plaintiffs' amended complaint, are compensable injuries as a matter of law." (Emphasis added.) *Bowerman* v. *United Illuminating*, supra, 23 Conn. L. Rptr. 590; *Goodall* v. *United Illuminating*, supra, 1998 WL 914274, *3.

The manner in which the answer was framed was informed by this question. "To successfully maintain an action in negligence, a plaintiff must demonstrate: 1) that the defendant has acted in a tortious manner; 2) that the plaintiff has sustained actual injury as a result of the defendant's actions; and 3) that the plaintiff knows of the causal connection between the defendant's tortious conduct and the resulting injury to the plaintiff. . . . Regardless of any breach of a standard of care by a defendant, a compensable injury must occur in order for an action in negligence to survive." (Emphasis in original.) *Bowerman* v. *United Illuminating*, supra, 23 Conn. L. Rptr. 590; *Goodall* v. *United Illuminating*, supra, 1998 WL 914274, *3. Judge Koletsky concluded that the asymptomatic scarring of lung tissue and the implantation of fibers in the lungs due to asbestos exposure did not constitute detrimental physical harm that was actionable. In large part, his decision was due to the inability of the plaintiffs to demonstrate on summary judgment that they indeed suffered from the conditions alleged in their complaint. *Bowerman* v. *United Illuminating*, supra, 23 Conn. L. Rptr. 593; *Goodall* v. *United Illuminating*, supra, 1998 WL 914274, *7.

More recently, the Superior Court has had the occasion to revisit this issue in *Dougan* v. *Sikorsky Aircraft Corp.*, Superior Court, judicial district of Hartford, Docket No. X03-CV-12-6033069 (March 28, 2017) and concluded, in granting summary judgment, that Connecticut tort law does not permit recovery based on asbestos exposure in the absence of any present clinical injury or physical symptom of an asbestos related illness or disease. The court's decision was based not on whether the plaintiffs, who all alleged "subclinical" injuries—defined as not detectable or producing effects that are not detectable by the usual clinical tests— alleged an "actual injury" but whether Connecticut recognizes a duty to prevent such harm. Id. The court applied the four factor test employed to determine whether public policy supports the imposition of a duty in cases alleging subclinical asbestos exposure claims and determined that it did not.[3] Id.

The plaintiffs argue not that Connecticut law recognizes claims for subclinical injuries not demonstrably capable of proof but, rather, relying on *R.T. Vanderbilt Co.*, that exposure to asbestos has been conclusively recognized as causative of a physical injury. Indeed, the Appellate Court indicated that it "had no difficulty concluding that asbestos exposure damages, harms,

hurts, weakens, and impairs the body, beginning at the time of exposure and continuing throughout the latency period until the development of malignancy and the ultimate manifestation of cancer." *R.T. Vanderbilt Co. v. Hartford Accident & Indemnity Co.*, supra, 171 Conn. App. 117. This was in large part because it is universally recognized that medical science confirms that some injury to body tissue occurs on the inhalation of asbestos fibers and that once lodged, the fibers pose an increased likelihood of causing or contributing to disease. Id., citing *Owens-Illinois*, Inc. v. *United Ins. Co.*, 138 N.J. 437, 454, 650 A.2d 974 (1994). As noted previously, *R.T. Vanderbilt Co.* decided only whether the physical effects of asbestos exposure fell within the definition of the word "injury" as commonly used in a policy of insurance. *R.T. Vanderbilt Co.* v. *Hartford Accident & Indemnity Co.*, supra, 118–23.

In the present case, whether the issue is framed as one of duty or actionable harm, the court need not decide whether Connecticut recognizes an absolute duty to prevent the exposure to asbestos resulting in the type of injury to the body found by the court in *R.T. Vanderbilt Co.* to be medically inescapable, or whether such presymptomatic and subclinical injury constitutes actionable harm, for the simple reason that the plaintiff has no allegations that any physical manifestation occurred as a result of the exposure. That is, the complaint is devoid of any allegation of scarring to the lungs, implantation of asbestos fiber, pleural thickening or any other physical component following the exposure.[4] The court holds that "actual injury" as an element of negligence requires the pleading and proof of some physical component of injury. See *Lawrence* v. *O & G Industries, Inc.*, supra, 319 Conn. 646; *Right* v. *Breen*, supra, 277 Conn. 375. The absence of such an allegation renders the negligence, premises liability and reckless claims legally insufficient even under the conclusions reached by the court in *R.T. Vanderbilt Co.* The motions to strike these claims are granted.

### Negligent Infliction of Emotional Distress

The defendants urge the court to strike the claims for negligent infliction of emotional distress for the identical reasons asserted against the other claims. The court is not persuaded. The elements of a claim for negligent infliction of emotional distress are well settled. A plaintiff must allege an unreasonable risk of causing the plaintiff emotional distress, the plaintiff's distress was foreseeable, the emotional distress was severe enough that it might result in illness or bodily harm, and, finally, that the defendant's conduct was the cause of the plaintiff's distress. *Olson* v. *Bristol–Burlington Health District*, 87 Conn. App. 1, 5, 863 A.2d 748 (2005), cert. granted, 273 Conn. 914, 870 A.2d 1083 (2005) (appeal withdrawn May 25, 2005). "In order to state a claim for negligent infliction of emotional

distress, the plaintiff must plead that the actor should have foreseen that her behavior would likely cause harm of a specific nature, i.e., emotional distress likely to lead to illness or bodily harm." Id. Such a claim does not require the allegation or proof of a present physical injury. Rather, it requires only an emotional injury that might result in bodily harm. The plaintiffs have alleged exactly the requisite elements by their allegations that the defendants "created an unreasonable risk of causing emotional distress to the plaintiff severe enough that it might result in illness or bodily harm. . . . It was foreseeable that such distress might result from the defendant's conduct . . . [which] was the cause of the [plaintiffs'] emotional distress." Plaintiffs' Complaint, ¶¶ 20–22, counts six through ten and twenty-six through thirty. The defendants' motions to strike these counts are denied.

## CONCLUSION

Based upon the foregoing the motions to strike are granted as to counts one through five and eleven through twenty-five but denied as to counts six through ten and counts twenty-six through thirty.

* Affirmed. *Poce* v. *O & G Industries, Inc.*, 210 Conn. App.     ,     A.3d (2022).

[1] The complaint does not define "PCP" or the nature of a "PCP related disease."

[2] Both cases were before the court on motions for summary judgment by the defendants, rather than the motion to strike presently before this court.

[3] The four factors are "(1) the normal expectations of the participants in the activity under review; (2) the public policy of encouraging participation in the activity, while weighing the safety of the participants; (3) the avoidance of increased litigation; and (4) the decisions of other jurisdictions." (Internal quotation marks omitted.) *Dougan* v. *Sikorsky Aircraft Corp.*, supra, Superior Court, Docket No. X03-CV-12-6033069, quoting *Lawrence* v. *O & G Industries, Inc.*, supra, 319 Conn. 650.

[4] Similarly, these motions do not require the court to answer whether all exposures to asbestos result in clinical disease or illness.